UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                    Plaintiff,

          v.

GLOBAL HORIZONS, INC., d/b/a Global Horizons Manpower, Inc.; GREEN ACRE FARMS, INC.; VALLEY FRUIT ORCHARDS, LLC; and DOES 1-10 inclusive;

                    Defendants.

NO.  CV-11-3045-EFS

**ORDER GRANTING IN PART AND DENYING IN PART THE GROWER DEFENDANTS' MOTIONS TO DISMISS**

Before the Court, without oral argument, are Defendant Green Acre Farms, Inc.'s ("Green Acre") and Valley Fruit Orchards, LLC's ("Valley Fruit") (collectively, "Grower Defendants"[1]) Motions to Dismiss Plaintiff Equal Employment Opportunity Commission's (EEOC) First Amended Complaint, ECF Nos. 150 & 154.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Grower Defendants ask the Court to dismiss the First Amended Complaint because it fails to state a claim for relief against

_____

[1] The First Amended Complaint refers to the Grower Defendants as "Farm Defendants."  The Court utilizes the phrase "Grower Defendants," finding it to more accurately reflect the Grower Defendants' fruit production.

ORDER * 1

them.   The EEOC opposes the motions.   After reviewing the filings and relevant authority, the Court is fully informed.   For the reasons set forth below, the Court grants in part and denies in part the Grower Defendants' motions.

## A.   Background[2]

Defendant Global Horizons, Inc. ("Global") recruited impoverished Thai nationals ("Claimants") to work at farms in the United States, including Green Acres' and Valley Fruit's orchards.   Global representatives told the Claimants that they would be able to work steady hours and make much money.   Notwithstanding the huge fees that Global charged the Claimants to participate in their program, the Claimants agreed to participate believing that they would earn a substantial amount of money.

Global worked with the U.S. Department of Labor (DOL) H2-A guest worker program to bring these individuals to American farms.   Although Global's DOL application paperwork was deficient (and allegedly contained fraudulent information), the DOL granted permission to Global to allow

---

[2]   This "background" section is based on the factual allegations contained in the First Amended Complaint.   *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   The Court assumes to be true those portions of the First Amended Complaint that "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," but does not afford the presumption of truth to allegations that "simply recite the elements of a cause of action." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

ORDER * 2

certain numbers of foreigners ("guest workers") to work at American farms and orchards. The H2-A program required either Global or its agricultural client to ensure that the guest workers had housing, transportation to the farms or orchards and subsistence if necessary, and to appropriately pay the guest workers. Global brought hundreds of guest workers to farms and orchards in the United States, including Washington, California, and Hawaii.

Global entered into at least one Farm Labor Contract H2-A Agreement ("H2-A Agreement") with both Green Acre and Valley Fruit to provide guest workers at their orchards for certain months in 2003 and 2004. These H2-A Agreements gave the Grower Defendants control over the work to be performed by the guest workers and the number of guest workers needed. Consistent with their H2-A Agreements, Global provided guest workers ("Claimants") to both Grower Defendants. The Grower Defendants advised the Claimants what work needed to be done and how to do it, provided the necessary equipment, set the work hours, and inspected the work done. Global also had personnel at the orchards and supervised the Claimants as well. Both the Grower Defendants and Global yelled at the Claimants and disciplined them for not doing sufficient work. The Grower Defendants also required the Claimants to engage in orchard tasks that were more difficult than those assigned to the workers of Mexican descent. Consistent with the H2-A Agreements, Global transported the Claimants to the orchards, established the housing, observed that the Claimants stayed near the Claimants' housing, and assisted in providing food to the Claimants. The transportation, housing, and subsistence provided by Global were unsafe and insufficient. The Claimants at Green

Acre complained of their work and living conditions to Green Acre and Global; thereafter, they received lesser hours at work and continued to suffer from Global's harassment.   The Claimants at Valley Fruit complained to Global and Valley Fruit that their pay was insufficient to pay off their substantial debt; Valley Fruit reduced their hours of work, and Global threatened to deport them and transfer them to a different farm.

The Claimants' passports were held by Global, and Global limited the Claimants' ability to leave the orchards and residences.   After suffering through these living and work conditions and being further harassed by Global, some of the Claimants were compelled to escape.

On April 18 and 24, 2006, Laphit Khadthan and Marut Kongpia, respectively, filed charges of discrimination with the EEOC against the Grower Defendants and Global, pertaining to the discrimination and harassment they allegedly suffered in 2003 and 2004.   The EEOC deemed it appropriate to pursue claims on the Claimants' behalf in federal court, and on April 19, 2011, the EEOC filed this lawsuit.   ECF No. 1.   On August 29, 2011, the Grower Defendants filed Answers.   ECF Nos. 12 & 13. Global has been served, ECF No. 8, but has not appeared.

On March 2, 2012, the EEOC sought leave to file an amended complaint, ECF No. 99.   The Court granted the EEOC leave to do so.   ECF No. 140.  On March 20, 2012, the EEOC filed its First Amended Complaint, ECF No. 141, asserting the following Title VII, 42 U.S.C. §§ 2000e-5 & 2000e-6 claims: 1) Defendants engaged in a pattern or practice of discriminatory treatment toward the Claimants because of their national origin or race, 2) Defendants subjected the Claimants to a hostile work

environment because of their race or national origin, thereby constructively discharging the Claimants who sought to escape, 3) Defendants discriminated against the Claimants because of their race or national origin, and 4) Defendants retaliated against the Claimants for complaining about the subjected-to discrimination and hostile work environment. On April 6, 2012, the Grower Defendants filed the instant motions to dismiss. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Grower Defendants ask the Court to 1) dismiss the First Amended Complaint because it fails to allege facts sufficient to support the asserted claims against them, and 2) find that these claims are subject to 42 U.S.C. § 2000e-5(1)'s 300-day statute of limitation. The EEOC opposes the motions.

**B.   Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555. In ruling on a motion under Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff and accept all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

**C.    Authority and Analysis**

**1.    Timing of Motions to Dismiss**

The EEOC contends the Grower Defendants' April 6, 2012 motions are untimely because they were filed after the Grower Defendants' August 29, 2011 Answers, ECF Nos. 12 & 13, submitting that Rule 12(b)(6) requires that a motion for failure to state a claim be filed before an answer. The EEOC correctly states the general rule regarding the timing of a Rule 12(b)(6) motion. However, on March 20, 2012, the EEOC filed its First Amended Complaint. Accordingly, the EEOC's initial complaint and the Grower Defendants' answers thereto are treated as nonexistent. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent."). Accordingly, the Grower Defendants permissibly filed these motions to dismiss the First Amended Complaint under Rule 12(b)(6).

**2.    Claims**

Title VII dictates that it "shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Faragher v. City of Boca Raton* (analyzing hostile work environment). As required by Title VII's express terms, an employment relationship must exist in order for these protections to apply. *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980). Here, the Grower Defendants challenge 1) the existence of a joint employment relationship with each other and with Global for all of the

alleged matters, and 2) whether the Claimants suffered an adverse employment action because of their race or national origin.

Beginning with the "employer" requirement, the EEOC contends that each respective Grower Defendant employed the Claimants, who worked at their orchard, for purposes of not only orchard-related matters but also for transportation, housing, subsistence, and recruiting matters given what the Grower Defendants should have known about Global's discriminatory practices and their joint employer relationship with Global. As discussed below, the First Amended Complaint plausibly alleges that the Grower Defendants, given their joint employer relationship with Global, employed the Claimants working at their respective orchards in regard *only* to orchard-related matters.

In regard to orchard-related matters, the First Amended Complaint alleges that both Global and the Grower Defendants supervised the Claimants at the respective orchards. *See Torres-Lopez v. May*, 111 F.3d 633, 640-43 (9th Cir. 1997) (discussing joint employment in context of Fair Labor Standards Act). And it specifically alleges that the Grower Defendants directed, inspected, and oversaw the work performed by the Claimants. *Id.* ¶¶ 121-28, 173-86 (alleging facts showing that the Grower Defendants had control over the work performed by the Claimants); *see Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945-46 (9th Cir. 2010) (discussing factors to consider when determining whether a defendant is an employer for purposes of Title VII). Accordingly, the First Amended Complaint alleges facts to support a plausible finding that the Grower Defendants were employers of the Claimants at their respective orchards; therefore, the EEOC may pursue relief on the Claimants' behalf pertaining to the Grower Defendants' conduct at their orchards. However, the pled

ORDER * 7

joint employer relationship between each respective Grower Defendant and Global does not equate to joint liability for the Grower Defendants and Global in regard to each others' conduct; rather, the pled facts support a plausible finding that both are "employers" for Title VII purposes as to their orchard-related conduct. *See, e.g., Torres-Lopez*, 111 F.3d at 640-43. The Grower Defendants' orchard-related conduct did not extend to paycheck issues because, under the alleged facts in the First Amended Complaint, it was Global, and not the Grower Defendants, that was responsible for calculating pay and issuing paychecks. Accordingly, with respect to non-paycheck orchard-related matters (hereinafter, "orchard-related matters"), each Grower Defendant is an employer of the Claimants working at their orchards.

In regard to non-orchard-related matters, the Court finds there are no alleged facts to support a plausible finding that the Grower Defendants were responsible for, oversaw, exerted control over, or should have exerted control over the recruiting process, transporting the Claimants, or providing subsistence and housing for the Claimants. The EEOC contends that the Grower Defendants are liable for any deficiencies in these non-orchard-related matters because they were joint employers with Global. Under the alleged facts, the Court disagrees.

First, as stated above, a joint employer relationship does not equate to joint liability. Second, the EEOC's argument that the Grower Defendants and Global are joint employers for all matters is not supported by the alleged facts: 1) the H2-A Compliance Review Checklist quoted in the First Amended Complaint identifies Global as the "employer" and the Grower Defendants as the "client" for purposes of the H2-A program, 2) the H2-A Agreements between Global and each Grower Defendant

ORDER * 8

placed the responsibility for recruiting and providing the Claimants with housing, transportation, and subsistence on Global, not the Grower Defendants, 3) there is no allegation that it is the Grower Defendants' practice, or a practice in the orchard industry, to transport, house, or feed its seasonal employees, and 4) there are no alleged facts that the Grower Defendants did so here. Therefore, the First Amended Complaint fails to plausibly allege that Global and each Grower Defendant are joint employers in regard to the non-orchard-related matters. The Grower Defendants' employment relationship with the Claimants did not extend to non-orchard-related matters under the alleged facts.

In summary, the facts alleged in the First Amended Complaint only plausibly support a finding that each Grower Defendant was an employer of the Claimants working for that Grower Defendant as to orchard-related matters and therefore only plausibly liable for any Title VII violations that the Grower Defendants engaged in at their orchards.

With this orchard-related limitation on the Grower Defendants "employer" status, the Court analyzes whether the First Amended Complaint sufficiently alleges the asserted Title VII disparate treatment, hostile work environment, constructive discharge, and retaliation claims (and related pattern and practice claims) against each Grower Defendant. The First Amended Complaint alleges the following orchard-related employment actions on account of the Claimants' race and national origin:

- the Claimants were disciplined and yelled at if their work was not properly done, ECF No. 141 ¶¶ 127 (Green Acre) & 233 (Valley Fruit);

- the Claimants were subject to deplorable working conditions, *id*. ¶¶ 131 (Green Acre) & 189 (Valley Fruit);

ORDER * 9

- the Claimants had to work four hours without a break, *id*. ¶ 148 (Green Acre);

- the Claimants had to do more difficult work than the workers of Mexican descent, *id*. ¶¶ 150 (Green Acre) & 214-16 (Valley Fruit);

- the working conditions became so intolerable that the Claimants felt compelled to escape, *id*. ¶¶ 162 (Green Acre) & 228 (Valley Fruit);

- the Claimants were harassed and threatened to meet quotas, *id*. ¶¶ 163-67 (Green Acre) & 229-32 (Valley Fruit);

- the Claimants were told that their work was not good enough, *id*. ¶ 185 (Green Acre); and

- the Claimants were required to continue working in 100 degree weather, *id*. ¶ 218 (Valley Fruit).

First, in regard to the hostile work environment and constructive discharge claims, when taking all possible reasonable inferences from the alleged facts in the EEOC's favor, the Court finds the First Amended Complaint's orchard-related allegations plausibly state such claims (and related pattern and practice claims) based on the Claimant's race or national origin against each of the Grower Defendants. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (identifying factors for hostile work environment claim as follows: 1) subjected to verbal or physical conduct, 2) because of race or national origin, 3) the conduct was unwelcome, and 4) the conduct was sufficiently severe or pervasive to alter the employment conditions and create an abusive working environment); *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004) (requiring an employee claiming that he was constructively

ORDER * 10

discharged to show "that the abusive working environment became so intolerable that her resignation qualified as a fitting response"). It is plausible that the Grower Defendants created a work environment that was hostile toward the Claimants, as opposed to the Mexican workers, and the Claimants were compelled to quit working at the orchards. Although it is also plausible that the Grower Defendants' actions toward the Claimants were simply to encourage the Claimants to harvest a product that the Grower Defendants could sell and their actions were not based on racial animus, the Court must construe the pled facts in the EEOC's favor at this time. However, the orchard-related hostile work environment claim may not be based on any argument that the Grower Defendants failed to provide the Claimants with the amount of work promised by Global or that they were forced to stay at the orchards unnecessarily long, because the First Amended Complaint alleges that recruiting and transporting the Claimants was Global's responsibility. Accordingly, with this limitation, the First Amended Complaint states hostile work environment and constructive discharge claims (and related pattern and practice claims) against the Grower Defendants as to the orchard-related matters. The Grower Defendants' motion is granted in part and denied in part.

Second, in regard to the disparate treatment claim, the Court finds the First Amended Complaint fails to allege facts to support a plausible disparate treatment claim (or related pattern and practice claim). *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (identifying factors for disparate treatment claim as follows: 1) a protected person, 2) qualified for the job and performed satisfactorily, 3) an adverse employment action was taken by the employer, 4) because of

the person's protected status).  The alleged facts do not identify a discrete adverse employment action.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000) (examining the adverse employment action element).  Although yelling and intolerable working conditions may constitute a hostile work environment, the alleged facts do not rise to the level needed to plausibly allege a discrete adverse employment action necessary to give rise to a disparate treatment claim (or related pattern or practice claim) distinct from a hostile work environment claim against the Grower Defendants in regard to orchard-related matters.  The Grower Defendants' motion is granted in this regard.

Finally, in regard to the EEOC's claim of retaliation (and related pattern and practice claim), the Court finds the First Amended Complaint's orchard-related factual allegations plausibly state such claims against Green Acre, ECF No. 141 ¶¶ 168 & 169 (alleging that Claimants complained to Green Acre about working conditions and that thereafter production demands increased and work assignments were reduced).  *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994) (setting forth elements for a Title VII retaliation claim).  In comparison, the Claimants at Valley Fruit only complained about the need to work more hours because they had substantial debt.  ECF No. 141 ¶ 234. Because it was Global, and not Valley Fruit, that allegedly made promises regarding the amount of work and pay that the Claimants would receive, the factual allegations are not sufficient to plausibly support a finding that the Claimants engaged in a protected activity when complaining about their work hours and pay received at the Valley Fruit orchards.  In this regard, Green Acres' motion is denied, and Valley Fruit's motion is granted.

### 3.    Statute of Limitations

The Grower Defendants contend that a 300-day statute of limitations applies to the EEOC's 42 U.S.C. § 2000e-5 claims (§ 706 disparate treatment, hostile work environment, constructive discharge, and retaliation claims) and § 2000e-6 claims (§ 707 pattern or practice claims).  The EEOC argues that the 300-day time limit set forth in 42 U.S.C. § 2000e-5(e)(1) does not apply to claims brought by the EEOC under § 2000e-6.

Section 2000e-6(e) states:

> the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission.  All such actions shall be conducted in accordance *with the procedures set forth in section 2000e-5 of this title*.

*Id.* § 2000e-6(e) (emphasis added).  Section 2000e-5(e)(1) provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . ., such charge shall be filed by or on behalf of the person aggrieved *within three hundred days after the alleged unlawful employment practice* occurred. . . .

42 U.S.C. § 2000e-5(e)(1) (emphasis added).  District courts are split on the question of whether the EEOC may seek relief for aggrieved persons pertaining to unlawful employment practices occurring more than 300 days before the filing of the administrative charge.  *See EEOC v. Freeman*, No. RWT 09cv2573, 2010 WL 1728847 (D. Md. April 27, 2010) (listing district court cases).

After reviewing the plain language of §§ 2000e-5 and 2000e-6, the Court concludes that § 2000e-5(e)(1)'s 300-day statute of limitation is a "procedure" that applies to an action brought under § 2000e-6(e). Therefore, the EEOC's claim of retaliation (and related pattern and practice claim) against Green Acre is a discrete act which must have occurred within 300 days of the filing of the administrative action. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002); *EEOC v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619, 625 (N.D. Ohio 2011) ("Even in a pattern-or-practice case such as this, the discrete decisions to refuse to hire and to terminate employment cannot be linked together to create a continuing violation. Each refusal to hire or termination occurred on a readily-identifiable date certain, and is subject to the time limitation of [§ 2000e-5(e)(1)].").  In contrast, because a hostile work environment claim (and related constructive discharge and pattern and practice claims) is "comprised of a series of separate acts that collectively constitute one unlawful employment practice," *id.* at 117, the entire period of hostile work environment is considered for liability purposes so long as the Grower Defendants' act contributing to the Claimant's hostile work environment claim (and related constructive discharge claim and pattern and practice claim) occurred within the 300-day filing period.  In summary, the Grower Defendants' motion is granted: the 300-day statute of limitations applies to actions brought by the EEOC.

**D.   Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED:**  The Grower Defendants' Motions to Dismiss Plaintiff's First Amended Complaint, **ECF Nos. 150 & 154**, are:

ORDER * 14

- **GRANTED IN PART:** 1) the disparate treatment claim and related pattern and practice claim are dismissed against all Grower Defendants, 2) the retaliation claim and related pattern and practice claim are dismissed against Valley Fruit, 3) no claim may be based on non-orchard-related matters; and 4) the 300-day statute of limitations applies as set forth above; and

- **DENIED IN PART:** 1) the hostile work environment and constructive discharge claims and related pattern and practice claims against the Grower Defendants survive as to orchard-related matters, and 2) the retaliation claim and related pattern and practice claim against Green Acre survive as to orchard-related matters.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to all counsel.

**DATED** this 27th  day of July 2012.


                          s/Edward F. Shea
                          EDWARD F. SHEA
                  Senior United States District Judge

Q:\EFS\Civil\2011\3045.dism.lc1.wpd

ORDER * 15