UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                    Plaintiff,

          v.

GLOBAL HORIZONS, INC., d/b/a
Global Horizons Manpower, Inc.;
GREEN ACRE FARMS, INC.; VALLEY
FRUIT ORCHARDS, LLC; and DOES 1-10
inclusive,

                    Defendants.

No.: CV-11-3045-EFS

**ORDER DENYING THE GROWER
DEFENDANTS' MOTION TO DISMISS**

     Before the Court, without oral argument, is the Defendants Green
Acre Farms, Inc. and Valley Fruit Orchards, LLC's (collectively,
"Grower Defendants") Motion to Dismiss for Lack of Jurisdiction
Pursuant to Federal Rule of Civil Procedure 12(h)(3), ECF No. 255.
The Grower Defendants ask the Court to 1) dismiss the post-October
2012-disclosed Claimants pursuant to Federal Rule of Civil Procedure
12(h)(3), and 2) preclude the EEOC from adding any additional
Claimants because the EEOC failed to satisfy its Title VII statutory
investigation and conciliation requirements in regard to these 55
individuals.  The EEOC opposes the motion, arguing 1) the statutory
investigation and conciliation requirements are not jurisdictional, 2)

ORDER - 1

the Court may not review the sufficiency of the EEOC's pre-lawsuit administration decisions, 3) the Grower Defendants were sufficiently advised that the EEOC believed they engaged in a pattern or practice of discrimination and retaliation as to the entire class of Thai individuals who worked at their orchards, and 4) any perceived deficiency in the EEOC's investigation and conciliation is due to the Grower Defendants decision to withhold the documents requested by the EEOC during its investigation.   After reviewing the filings and relevant authority, the Court is fully informed.   For the reasons set forth below, the Court denies the Grower Defendants' motion because this Court's subject-matter jurisdiction is not dependent upon the satisfaction of 42 U.S.C. § 2000e-5's pre-lawsuit administrative requirements.

## A.    Background

On April 12, 2006, Laphit Khadthan filed a Charge of Discrimination with the EEOC against Green Acre Farms ("Green Acre") contending that he was discriminated and retaliated against on the basis of his national origin.   ECF No. 265, Ex. A at 1-2.   Likewise, Marut Kongpia filed a Charge of Discrimination against Valley Fruit Orchards ("Valley Fruit") alleging that he was discriminated and retaliated against on the basis of his national origin.   *Id.*, Ex. B at 1.   The descriptive language in the "particulars" section of these Charges of Discrimination is the same, stating:

> I.    Since 2005, I have been harassed, subjected to different terms and conditions of employment, and

ORDER - 2

intimidated in all aspects of employment with [Green Acres/Valley Fruit], due to my national origin (Thailand).

II. On many occasions, I objected [sic] the terms and conditions of employment but was ignored.

III. I believe I have been harassed, subjected to different terms and conditions of employment, and intimidated because of my national origin (Thailand) and retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

IV. Further since [2003/2005], I believe that employees as a class have been discriminated against due to their national origin (Thailand) and retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.*, Exs. A & B. Similar charges of discrimination were filed by 71 other Thai individuals as to Green Acre, and 27 Thai individuals as to Valley Fruit. ECF NO. 301 ¶ 13.

In June and July 2006, the Grower Defendants' counsel wrote letters to the EEOC regarding the Charges of Discrimination. These letters 1) advised the EEOC that the Charging Parties were never employed by the Grower Defendants but may have been employed by Global Horizons, Inc. ("Global"), 2) highlighted that the Charges of Discrimination only vaguely allege harassment, discrimination, and retaliation, and 3) requested that the EEOC provide the Grower Defendants with specifics as to the alleged discriminatory and retaliatory acts. *Id.*, Ex. C at 2-3; ECF No. 265, Ex. D at 2-21. Again, in December 2007, the Grower Defendants' counsel wrote the EEOC maintaining that the Charging Parties were not its employees, the Charges of Discrimination were untimely, and the Charges of Discrimination were too vague to allow for a specific response

ORDER - 3

thereto. *Id.*, Ex. D at 22-23. Approximately one year later, in September 2008, the Grower Defendants' counsel again communicated in writing with the EEOC. *Id.*, Ex. C at 4-6. This letter emphasized again the vagueness of the allegations and that a federal judge had found that the Grower Defendants were not a joint employer with Global. *Id.* Counsel also wrote, "In our conversation yesterday, it became apparent that none of the charging parties has [sic] been interviewed by the EEOC." *Id.*, Ex. D. at 25.

There is nothing in the record indicating that the EEOC responded to the Grower Defendants' vagueness, timeliness, or joint-employer concerns. Rather, on March 8, 2010, the EEOC sent the Grower Defendants a letter advising that "[a]dditional information is necessary in order to begin the investigation of these charges." *Id.*, Ex. C at 7. Attached to this letter was a three-and-a-half-page request for information, including:

> Provide a list of all employees who performed farm work for your organization during the period April 1, 2004, to the present. This list should include all farm workers, regardless of whether they filed a charge of discrimination and regardless of whether they were employed by your organization, Global Horizons, or another entity.

*Id.*, Ex. C at 8-14. The EEOC set a March 29, 2010 response deadline. Also attached was a "[l]list of Charging Parties who filed EEOC Discrimination Charges [a]gainst" the Grower Defendants: there were 75 listed Charging Parties as to Green Acre, and 28 listed Charging Parties as to Valley Fruit. *Id.*, Ex. D at 27 & 32.

ORDER - 4

On March 23, 2010, counsel for Grower Defendants wrote the EEOC regarding the Charges of Discrimination, again relaying that the Grower Defendants contend 1) the charges are untimely because no Charging Party has worked at the orchards since November 2004, 2) the Charging Parties were employed by Global, with whom the Grower Defendants are not a joint employer, and 3) the charging allegations are too vague to support "a substantive response other than a general denial." *Id.*, Ex. C. at 12-15, & Ex. D at 35-38. Counsel for the Grower Defendants also advised that the only documentation they possessed were the invoices provided by Global. *Id.*, Ex. C at 15, & Ex. D at 38.

On April 14, 2010, EEOC Senior Investigator Vincient Robertson summarized a conversation that he had with Grower Defendants' counsel wherein Grower Defendants' counsel advised that responding to the requested documents would be overburdensome and most of the requests sought irrelevant documents. ECF No. 265, Ex. E at 3. Investigatory Robertson also noted, "[defense counsel] said he could provide copies of invoices from Global that he believes may have the names of Global employees on them. I stated that I will get back with him." *Id.*

On April 22, 2010, the EEOC wrote the Grower Defendants' counsel and asserted that the investigation was 1) appropriate because the EEOC's investigation revealed evidence suggesting a joint employer relationship between the Grower Defendants and Global, and 2) timely because the "EEOC has at least one timely charge against your farms."

ORDER - 5

*Id.*, Ex. C at 16-17, & Ex. D. at 39.   The EEOC did not detail the referenced evidence, the claimed timely charge, or the charged discriminatory and retaliatory conduct.   *Id.*   The EEOC repeated that it expected the Grower Defendants to provide it with the requested information and extended the production deadline to April 30, 2010. *Id.*

On April 26, 2010, the Grower Defendants' counsel wrote to a Congressman for that district and requested the Congressional Office assist the Grower Defendants with obtaining information from the EEOC as to the alleged class-wide discrimination.   *Id.*, Ex. D. at 44-45. Also, on this date, the Grower Defendants' counsel wrote to the EEOC again seeking information as to the timely charge of national origin discrimination, maintaining the lack of a joint-employer relationship and contesting the requested information on the grounds of relevance. *Id.*, Ex. C at 20-21, & Ex. D at 41-42.   Counsel stated, "I want to remind you my clients were willing to discuss providing copies of the records they have regarding Global Horizon's employment of nonimmigrant alien and resident workers between April 2004 and October [] 2005.   The invoices from Global distinguished between workers who had to be provided housing (nonimmigrant aliens), who were more expensive, and local residents who were not provided housing."   *Id.*, Ex. C at 21-22, & Ex. D at 41-42.

On April 26, 2010, Investigator Robertson summarized in a Memorandum to File a conversation that he had with Grower Defendants'

ORDER - 6

counsel wherein counsel relayed the names of the custodian of records for the Grower Defendants, and shared the district court case number wherein the court found there was no joint employer relationship between Global and the Grower Defendants. *Id.*, Ex. E at 2.

On May 6, 2010, the EEOC issued subpoenas to the Grower Defendants for the previously requested information. *Id.*, Ex. C at 32-54, & Ex. D at 54-66. On May 14, 2010, the Grower Defendants asked the EEOC to revoke or modify the subpoenas because they were overly burdensome and required the Grower Defendants to spend tens of thousands of dollars to answer the largely irrelevant information. *Id.*, Ex. C at 25-30, & Ex. D at 47-52. A month later, the Grower Defendants advised the EEOC, in writing, that their position regarding the subpoenas remained the same but, if the EEOC was interested in reviewing the documents that were in the Grower Defendants' possession, Grower Defendants' counsel would discuss making "those documents available to [the EEOC] as soon as we can resolve the jurisdictional and time-bar issues." *Id.*, Ex. D at 67.

There is nothing in the record reflecting that the EEOC requested the Global invoices from the Grower Defendants before the EEOC issued substantively identical Letters of Determination for 71 Charging Parties as to Green Acre and 30 Charging Parties as to Valley Fruit on August 17, 2010. *Id.*, Ex. A at 4-5, & Ex. B at 4-5; ECF No. 308 ¶ 5. In pertinent part, these Letters of Determination repeat the

ORDER - 7

allegations contained in the Charges of Discrimination, and also state:

> The Commission has determined that there is reasonable cause to believe that Respondent discriminated and/or engaged in a pattern or practice of discrimination against a class of individuals, including the Charging Party, based on their national origin, Thai, and that Respondent retaliated against the Charging Party and the class for participating in a protected activity, in that Respondent subjected them to harassment, intimidation and different terms and conditions of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

> The Commission also makes a like and related finding that there is reasonable cause to believe that Respondent discriminated and/or engaged in a pattern or practice of discrimination against a class of individuals, including the Charging Party, based on their race, Asian, when it subjected them to harassment, intimidation and different terms and conditions of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

> Furthermore, the Commission makes a like and related finding that there is reasonable cause to believe that Respondent constructively discharged a class of individuals when it discriminated and/or engaged in a pattern or practice of discrimination against a class of individuals, based on their national origin, Thai, race, Asian, and in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF No. 265, Ex. A at 4-5, & Ex. B at 4-5. The Letters of Determination then invited the Grower Defendants to "join" the EEOC "in a collective effort toward a just resolution of this matter." *Id.*, Ex. A at 5, & Ex. B at 5.

On August 26, 2010, the EEOC issued its conciliation proposal to the Grower Defendants. *Id.*, Ex. F at 20-23, 40-43, & Ex. G at 19-24. Nineteen specific requests for relief were included, including 1)

ORDER - 8

requiring the Grower Defendants to "hire all interested individuals who are otherwise qualified to work," 2) "provid[ing] sponsorship of visas and other immigrant documents necessary for those interested individuals to work in the U.S.," and 3) demanding $250,000 in pecuniary and non-pecuniary compensation for each listed Charging Party: 29 listed Charging Parties for Valley Fruit for a total compensatory amount of $7,250,000, *id.*, Ex. F at 20-24; and 73 listed Charging Parties for Green Acres for a total compensatory amount of $18,000,000, *id.*, Ex. G at 20-24.  These letters cautioned the Grower Defendants that, if conciliation was unsuccessful, the EEOC might seek additional remedies for additional class members.  *Id.*, Ex. F. at 22, & Ex. G at 21.

On September 9, 2010, Grower Defendants' counsel wrote Investigator Robertson and advised that they still had yet to be informed of the substantive facts supporting the asserted charges against the Grower Defendants.  ECF No. 265, Ex. F at 32-39.  In addition, the letter advised that no Grower Defendants' representative had been interviewed by the EEOC.  Counsel again shared that the Grower Defendants would provide the EEOC with copies of Global's invoices and supporting documentation if the EEOC so desired.  *Id.*, Ex. F. at 34, 37-38.

On September 13, 2010, the EEOC sent a follow-up letter to the Grower Defendants.  *Id.*, Ex. F at 10-11, & Ex. G at 10-11.  The letter stated:

ORDER - 9

> [T]he EEOC found reasonable cause to believe that Charging Parties and a class of similarly situated individuals were subjected to unlawful discrimination and retaliation. The EEOC made its determinations after conducting a thorough investigation, including reviews of the original charges of discrimination filed against [Green Acre/Valley Fruit] (Respondent), requesting and reviewing documents from Respondent and/or Global, and interviewing both charging Parties and various Respondent and/or Global supervisors. The EEOC's August 17, 2010 Letter of Determination describes with sufficient specificity the particular determinations made by the EEOC.

*Id.*, Ex. F at 10, & Ex. G at 10. In response, on September 14, 2010, the Grower Defendants' counsel wrote the EEOC maintaining the Letters of Determination:

> do not provide any substantive information other than the statement that the EEOC has found reasonable cause to believe the Charging Parties and a class of similarly situated individuals were subjected to unlawful discrimination and retaliation. Those Determinations do not articulate any substantive information describing the alleged statements or conduct that the EEOC contends constitute unlawful discrimination or retaliation.

*Id.*, Ex. C at 58, & Ex. F at 4. The letter also advised that the Grower Defendants are legally unable to hire the Charging Parties given their immigration status. *Id.* However, the Grower Defendants agreed to 1) preclude discrimination on the basis of national origin or retaliation against any employee who complains about such, 2) not retaliate against any Charging Party, 3) provide the EEOC with a copy of its anti-discrimination policy, 4) distribute the anti-discrimination policy to its employees after the EEOC reviewed and revised it, and 5) provide annual training to all management and non-

ORDER - 10

management employees and report compliance of such training to the EEOC. *Id.*, Ex. C at 60, & Ex. D. at 5-6.

On September 15, 2010, Investigator Robertson and Grower Defendants' counsel conversed. Grower Defendants' counsel advised that they would not offer a monetary component and that a federal judge had ruled there was no joint employer relationship. *Id.*, Ex. F at 7-8. Between September 17 and 23, 2010, the EEOC sent Notices of a Failure to Conciliate to Green Acre for 71 Charging Parties, and similar notices to Valley Fruit for 28 Charging Parties. These notices advised the EEOC "determines that further conciliation efforts would be futile or non-productive . . . Accordingly, we are at this time forwarding the case to our Legal Department for possible litigation." *Id.*, Ex. A at 6, & Ex. B at 6; ECF No. 308 ¶ 7.

On April 19, 2011, the EEOC filed this lawsuit. ECF No. 1. On March 11, 2012, the EEOC disclosed its Federal Rule of Civil Procedure 26(a) initial disclosures, wherein the EEOC attached a list of Claimants by initials only: 87 Claimants as to Green Acre Farms, and 37 Claimants as to Valley Fruit. ECF No. 273 at 2; ECF No. 274, Ex. 1.

On October 24, 2012, the EEOC advised that it sought $300,000 in emotional distress and punitive damages per class member: 140 Claimants as to Green Acre, for a total requested monetary damages award of $42,000,000, and 85 Claimants as to Valley Fruit, for a total requested damages award of $25,500,000. ECF No. 274, Ex. 2.

ORDER - 11

On November 13, 2012, EEOC counsel advised the Court that it had reviewed the October 5, 2012 Grower-Defendants-disclosed Global invoices and discovered more Thai individuals who had worked at the Grower Defendants' orchards and thus would add Claimants consistent with the invoices. ECF No. 232 at 2:19-3:3 & 4:22-5:1. On November 29, 2012, the EEOC supplemented its discovery responses and identified 143 Claimants as to Green Acres, and 86 Claimants as to Valley Fruit. ECF No. 274, Ex. 3.

On December 7, 2012, the Grower Defendants filed the instant dismissal motion. ECF No. 255. One month later, on January 10, 2013, the EEOC again supplemented its discovery responses, identifying 145 Claimants as to Green Acres, and 199 Claimants as to Valley Fruit. ECF No. 274, Ex. 4.

On January 17, 2013, the Court ordered the EEOC to supplement its response to the dismissal motion by providing certain factual information. ECF No. 280. On January 25, 2013, the Court granted the EEOC an extension of time to provide the requested information and also clarified that the Court was seeking:

> 1) [a] list [of] the individuals that the EEOC interviewed after receiving the charges of discrimination against the Grower Defendants in April 2006 and terminating the conciliation process in September 2010, and 2) [a] descri[ption of] the documents that were requested regarding the Grower Defendants or the Thai individuals working at those orchards from the Claimants, Global, or other individual or non-Grower-Defendant entities during the identified time period.

ORDER - 12

ECF No. 293 at 2.  On February 7, 2013, the EEOC filed its supplement:
Ms. Park's Declaration.  ECF No. 301.  Ms. Park declares that 72
Charging Parties were interviewed regarding the alleged discrimination
occurring at Green Acre, and 28 Charging Parties were interviewed
regarding the alleged discrimination at Valley Fruit.  ECF No. 301 at
8.  Ms. Park does not specify whether the EEOC conducted those
interviews and whether the interviews occurred prior to the Letters of
Determination.[1]  *Id.*  Also, Ms. Park does not identify whether any
Grower Defendant agent or representative was interviewed by the EEOC
in connection with the alleged discrimination and retaliation
occurring at the Grower Defendants' orchards.  Ms. Park does disclose:

> The EEOC's investigation revealed that Global supplied 199
> Thai workers to work at farms operated by the Grower
> Defendants Green Acre Farms, Inc. and 245 Thai workers to
> work at farms operated by Defendant Valley Fruit Orchards,
> LLC.  That is the full scope of the potential class for
> each of the defendants before this Court.

ECF No. 301 ¶ 24.  Also in early February 2013, the EEOC again
supplemented its discovery responses, identifying 245 Claimants as to
Green Acre, and 199 Claimants as to Valley Fruit:  the reverse of that
indicated in Ms. Park's declaration. ECF No. 308 ¶ 11 & Ex. 9.

---

[1]  Ms. Park states that Title VII prohibits the EEOC from naming
non-charging parties that were interviewed "where such a witness
testified to the agency regarding Global's farm-clients that were not
sued by the EEOC."  ECF No. 301 at 12.

ORDER - 13

On March 6, 2013, the Court advised that it would consider the entirety of Ms. Park's declaration and also granted the Grower Defendants leave to supplement their dismissal motion with the January 15, 2013 Declaration of Ms. Joffe, ECF No. 272. ECF No. 317 at 7.

**B.    Authority and Analysis**

The current issue before the Court is whether the Court has subject-matter jurisdiction to hear the Title VII claims brought on behalf of the post-October 24, 2012-disclosed Claimants if the EEOC failed to satisfy its jurisdictional pre-suit investigation and conciliation requirements. As explained below, the Court finds that it possesses subject-matter jurisdiction to hear the Title VII claims on behalf of all Claimants, even those disclosed after October 24, 2012, regardless of whether the EEOC satisfied its statutory pre-lawsuit requirements.

In 1972, Congress granted the EEOC the authority to file a civil lawsuit to enforce Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended. Congress also granted subject-matter jurisdiction over "actions brought under this subchapter" to federal district courts. 42 U.S.C. § 2000e-5(f)(3). Accordingly, it is clear, and undisputed, that this Court has subject-matter jurisdiction to resolve this Title VII lawsuit.

The more pointed question, and the disputed issue here, is whether 1) the Court may exercise subject-matter jurisdiction only over claims for which the EEOC satisfied its pre-suit requirements of

ORDER - 14

notice, investigation, reasonable-cause determination, and conciliation (a matter subject to a dismissal motion under Federal Rule of Civil Procedure 12(b)(1) or 12(h)(3) (lack of subject-matter jurisdiction)), or 2) these pre-suit requirements are matters that the EEOC must prove to establish a right to Title VII relief (a matter subject to either a dismissal motion under Rule 12(b)(6) (failure to state a claim) or a summary-judgment motion under Rule 56). The case law on this issue is not settled. To give context to the case law, the Court starts first with the statutory language.

Through § 2000e-5, Congress granted the EEOC the ability to file a lawsuit seeking Title VII relief; however, Congress imposed pre-lawsuit requirements on the EEOC. Pursuant to § 2000e-5(b), the EEOC must 1) serve the employer with a notice of the charge, including the date, place, and circumstances of the alleged unlawful employment practice; 2) investigate the alleged unlawful employment practice; 3) determine that there is reasonable cause to believe the charged unlawful employment practice occurred; and 4) eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.[2] *Id.* § 2000e-5(b). If

---

[2] In pertinent part, when a charge is filed by or on behalf of a person claiming to be aggrieved by an "unlawful employment practice,"

> the Commission shall serve a notice of the charge
> (including the date, place and circumstances of the alleged
> unlawful employment practice) on such employer . . .
> (hereinafter referred to as the "respondent") within ten
> days, and shall make an investigation thereof. Charges

ORDER - 15

within the specified time period, the EEOC "has been unable to secure

from the respondent a conciliation agreement acceptable to the [EEOC],

the [EEOC] may bring a civil action against any respondent . . . named

in the charge." *Id.* § 2000e-5(f)(1).

The Grower Defendants aptly rely on the language contained in

the Ninth Circuit decision *EEOC v. Pierce Packing Co.*, 669 F.2d 605,

607 (9th Cir. 1982).  In *Pierce Packing*, the Ninth Circuit affirmed

the district court's dismissal of an EEOC-filed discrimination action

because the EEOC failed to exhaust its pre-lawsuit conciliation

requirement.    *Id.*    In reaching this ruling, the Ninth Circuit

emphasized that "[g]enuine investigation, [the] reasonable cause

determination[,] and conciliation are jurisdictional conditions

precedent to suit." *Id.* at 608.  Accordingly, *Pierce Packing* supports

---

shall be in writing under oath or affirmation and shall
contain such information and be in such form as the
Commission requires.  Charges shall not be made public by
the Commission. . . .  If the Commission determines after
such investigation that there is reasonable cause to
believe that the charge is true, the Commission shall
endeavor to eliminate any such alleged unlawful employment
practice by informal methods of conference, conciliation,
and persuasion.  Nothing said or done during and as a part
of such informal endeavors may be made public by the
Commission, its officers or employees, or used as evidence
in a subsequent proceeding without the written consent of
the persons concerned. . . .  The Commission shall make its
determination on reasonable cause as promptly as possible
and, so far as practicable, not later than one hundred and
twenty days from the filing of the charge or, where
applicable under subsection (c) or (d) of this section,
from the date upon which the Commission is authorized to
take action with respect to the charge.

42 U.S.C. § 2000e-5(b).

ORDER - 16

the Grower Defendants' argument that these pre-lawsuit requirements are subject-matter-jurisdiction requirements. *See also Munoz v. Mabus*, 630 F.3d 856, 861 (9th Cir. 2010) ("Title VII and the EEOC's implementing regulations set forth specific administrative procedures that a complainant must first exhaust before gaining access to the federal courts on a discrimination complaint.").

However, recent Supreme Court case law vitiates this particular aspect of *Pierce Packing*.   In 2006, in *Arbaugh v. Y & H Corp.*, the Supreme Court analyzed whether Title VII's employer-numerosity requirement is 1) a prerequisite to a court's subject-matter jurisdiction, or 2) an element for a Title VII that must be proved by the plaintiff.   546 U.S. 500 (2006).   The Supreme Court determined it was an element of the Title VII claim:  a merits-based determination. *Id.* at 511, 515-16.   In so holding, the Supreme Court recognized that it and other courts have "sometimes been profligate" in the "use of the term" 'jurisdiction.'   *Id.* at 510.   And "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief."   *Id.* at 511 (internal quotation removed).

Just recently, the Supreme Court again addressed the subject-matter jurisdiction and required-element dichotomy in *Sebelius v. Auburn Regional Medical Center*, 133 S. Ct. 817 (2013).   In analyzing whether a time limit for filing appeals to the Provider Reimbursement

ORDER - 17

Review Board was a subject-matter-jurisdiction requirement or a required element of the asserted claim, the Supreme Court discussed the practical importance of distinguishing between the two principles: "Characterizing a rule as jurisdictional renders it unique in our adversarial system. Objections to a tribunals' jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." *Id.* at 824. Therefore, a court must take care to assess whether a statutory requirement is a subject-matter-jurisdiction requirement or an element of the asserted claim.[3]  In making this assessment, the court must:

> inquire whether Congress has clearly state[d] that the rule
> is jurisdictional; absent such a clear statement, . . . .
> courts should treat the restriction as nonjurisdictional in
> nature.  This is not to say that Congress must incant magic
> words in order to speak clearly. . . . [A court is to]
> consider context, . . . as probative of whether Congress
> intended a particular provision to rank as jurisdictional.

*Id.* at 824 (internal citations and quotations removed).

After examining this binding Supreme Court case law, the Court determines the Supreme Court has overturned the Ninth Circuit's holding in *Pierce Packing* that § 2000e-5's pre-lawsuit requirements are jurisdictional requirements, and other Ninth Circuit cases so holding.  Section 2000e-5(f)(3), the subsection granting subject-

---

[3]  The resolution of this dichotomy also impacts what legal vehicle the parties and the Court are to employ:  a subject-matter-jurisdiction motion under Rule 12(b)(1) or (h)(3), or an elements-focused motion under Rule 12(b)(6) or Rule 56.

ORDER - 18

matter jurisdiction, does not limit a federal court's jurisdiction to only those claims for which all pre-lawsuit requirements are met. Rather, § 2000e-5(f)(3) broadly grants a federal court jurisdiction to hear "actions brought under this subchapter." That the subchapter requires the EEOC to notify the respondent, investigate the alleged unlawful employment practice, make a reasonable-cause determination, and meaningfully conciliate the matter prior to bringing a lawsuit does not vitiate a federal court's subject-matter jurisdiction to hear lawsuits brought by the EEOC under § 2000e-5. Rather, these pre-lawsuit requirements are elements that must be proven by the EEOC in order to show that it and the individuals on whose behalf it seeks relief are entitled to relief. *See EEOC v. Evans Fruit Co.*, 872 F. Supp. 2d 1107, 1115-16 (E.D. Wash. 2012) (finding that Title VII's pre-lawsuit requirements are not jurisdictional requirements); *EEOC v. Alia Corp.*, 842 F. Supp. 2d 1243, 1253-54 (E.D. Cal. 2012) ("While § 2000e-5(f)(1) speaks of conciliation as a precondition to filing suit, it does not explicitly state that a court's jurisdiction rests on the satisfaction of this condition. . . . Indeed, the statutory provision that does confer federal courts jurisdiction over Title VII claims makes not reference to the conciliation requirement at all."). *But see EEOC v. La Rana Hawaii LLC*, 888 F. Supp. 2d 1019, 1043 (D. Hawaii 2012) ("[T]his Court remains bound by the Ninth Circuit's holding" in *Pierce Packing*.); *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981) ("Proper investigation and conciliation of charges are

ORDER - 19

characterized as jurisdictional prerequisites to a suit by the EEOC on a particular claim.").

Although these statutory pre-lawsuit requirements are not subject-matter-jurisdiction requirements, it is clear that Congress intended the EEOC to satisfy these requirements before filing suit, and therefore a failure to satisfy these requirements will result in the EEOC's lawsuit being dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) or entry of summary judgment against the EEOC under Rule 56. Additionally, a failure by the EEOC to satisfy its statutory notice, investigation, reasonable-cause determination, and conciliation requirements exposes the EEOC to an award of reasonable attorney's fees and costs against it. Under § 2000e-5(k), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs, and the [EEOC] and the United States shall be liable for costs the same as a private person." *See also Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (recognizing that a district court may award the prevailing defendant its attorney's fees "upon a finding that the [EEOC's] action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith"). As the Ninth Circuit determined in *Pierce Packing*,[4] the premature filing of a Title VII case by the EEOC

---

[4] This aspect of *Pierce Packing* has not been overturned by the Supreme Court law.

ORDER - 20

can be deemed an unreasonable action, thereby justifying an award of attorney's fees to the prevailing defendant.   669 F.2d at 609; *see also EEOC v. Bruno's Restaurant*, 13 F.3d 285, 289 (9th Cir. 1993) (asking whether "the EEOC could reasonably have believed that its efforts to conciliate were sufficient").   Given the potential risk of paying a defendant's attorney's fees and costs, the EEOC must carefully ensure that it has satisfied its statutory pre-lawsuit requirements before filing a lawsuit in federal court.   However, the EEOC's failure to satisfy its pre-lawsuit requirements does not restrict the federal court's subject-matter jurisdiction over the filed Title VII lawsuit.

Accordingly, it is immaterial for purposes of the Grower Defendants' motion to dismiss under Rule 12(h)(3) whether the EEOC satisfied its investigation and conciliation requirements as to either the pre-October 2012-disclosed Claimants or post-October 2012-disclosed Claimants.   Therefore, it is not appropriate at this time for the Court to assess the EEOC's pre-lawsuit conduct.   However, the Court briefly addresses the EEOC's argument that a court may not inquire into the sufficiency of the EEOC's pre-lawsuit activities. Relying on *EEOC v. KECO Industries, Inc.*, 748 F.2d 1097 (6th Cir. 1984), the EEOC argues that its pre-lawsuit activities are administrative matters for which the Court must grant the EEOC deference and therefore may not scrutinize.   In *KECO Industries*, the Sixth Circuit held that it "was error for the district court to

ORDER - 21

inquire into the sufficiency of the Commission's investigation." *Id.* at 1100.    However, this holding must be read in the context of the issues before the Sixth Circuit.    The Sixth Circuit was addressing whether the district court appropriately examined the sufficiency of the evidence underlying the EEOC's finding of discrimination.    This is a different question than would be before the Court in either a motion to dismiss for failure to satisfy the pre-lawsuit requirements or a summary-judgment motion contending that the EEOC cannot establish a triable issue of fact as to the satisfaction of the pre-lawsuit requirements.    Such motions would not require the Court to second-guess the EEOC's determination that discrimination took place.

**C.    Conclusion**

Because the current Rule 12(h)(3) motion argues that the Court lacks subject-matter jurisdiction over the post-October 2012-disclosed Claimants because the EEOC failed to satisfy its pre-lawsuit investigation and conciliation requirements in regard to these Claimants, and because the Court finds § 2000e-5(k)'s grant of subject-matter jurisdiction over Title VII claims is not hinged on the EEOC's satisfaction of its statutory pre-lawsuit requirements, **IT IS HEREBY ORDERED**:    the Grower Defendants' Motion to Dismiss for Lack of

///

///

//

/

ORDER - 22

Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(h)(3), **ECF No. 255**, is **DENIED**.

    **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to counsel.

    **DATED** this 12th day of April 2013.


                        _____s/Edward F. Shea_____
                           EDWARD F. SHEA
           Senior United States District Judge

Q:\EFS\Civil\2011\3045.dismiss.concil.final.lc1.docx

ORDER - 23