UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>          Plaintiff,<br><br>      v.<br><br>GLOBAL HORIZONS, INC., d/b/a Global Horizons Manpower, Inc.; GREEN ACRE FARMS, INC.; VALLEY FRUIT ORCHARDS, LLC; and DOES 1-10 inclusive,<br><br>          Defendants. | No.: CV-11-3045-EFS<br><br>**ORDER GRANTING THE GROWER DEFENDANTS' JOINED MOTION RE: PROTECTIVE ORDER (IMMIGRATION MATTERS) AND DENYING THE GROWER DEFENDANTS' MOTION FOR ATTORNEY'S FEES** |

A hearing occurred in the above-captioned matter on July 25, 2013. Plaintiff Equal Employment Opportunity Commission (EEOC) was represented by Elizabeth Esparza-Cervantes. Beth Joffe and Olivia Gonzalez appeared on behalf of Defendants Green Acre Farms, Inc. and Valley Fruit Orchards, LLC (collectively, "Grower Defendants"). Global Horizons, Inc. ("Global") was represented by Javier Lopez-Perez. Before the Court were the Grower Defendants' Joint Motion to Modify Protective Order Re: Immigration Status to Allow Discovery of Claimants' T-Visa Status and Application Information, ECF No. 345; Grower Defendants' Motion for Fees as Prevailing Party, ECF No. 350; and Global's Motion Joining Grower Defendants' Motion to Modify

**ORDER** - 1

Protective Order Re: Immigration Status, ECF No. 363.  After reviewing the record and relevant authority and hearing from counsel, the Court is fully informed.   This Order supplements and memorializes the Court's oral rulings.  For the reasons set forth below and articulated on the record, Defendants' motions to modify the protective order are granted and the Grower Defendants' motion for attorney's fees is denied.

**A.    Defendants' Motions to Modify Protective Order**

The Grower Defendants filed a Joint Motion to Modify Protective Order Re: Immigration Status to Allow Discovery of Claimants' T-Visa Status and Application Information, ECF No. 345; Global thereafter filed a Motion Joining Grower Defendants' Motion to Modify Protective Order Re: Immigration Status, ECF No. 363.  Collectively, Defendants ask the Court to modify the November 29, 2012 protective order, ECF No. 245, to permit them to discover the Claimants' T-Visa status and applications[1] because such information is vital to 1) assess the Claimants' credibility by comparing the information contained on, or submitted with, the T-Visa applications with the Claimants' Charges of Discrimination and deposition testimony, and 2) support Defendants' defense that the Claimants were encouraged to make human-trafficking

---

[1] At the hearing, defense counsel clarified that they seek the T-Visa applications, evidence submitted in support of the applications, and T-Visa status for all Claimants: not simply for the five Claimants that have been deposed.

statements against Global and the Grower Defendants to secure T-Visa status.

The EEOC opposes the motions, arguing Defendants fail to identify that discovery of the requested information is appropriate in light of the prejudice the Claimants will suffer if they must disclose information pertaining to their immigration status given the EEOC's understanding that not all Claimants have been granted a T-Visa.[2] The EEOC also argues the Claimants' T-Visa status and applications are irrelevant because 1) this lawsuit concerns employment discrimination, not human trafficking, and 2) it is the Department of Homeland Security, not the Thai Community Development Center (Thai CDC) or EEOC, which ascertains whether T-Visas should be granted to the Claimants.

### 1.   Background

The EEOC brought this Title VII lawsuit on behalf of the Thai H-2A guest workers who were brought by Global to work at the Grower Defendants' orchards in Washington's Yakima Valley.  In connection with the Grower Defendants' prior motions to dismiss, the Court found the First Amended Complaint, ECF No. 141, plausibly alleges the Grower Defendants employed the Claimants in regard to "orchard-related matters." ECF No. 178 at 7.  Specifically, the Court found the First Amended Complaint alleges hostile-work-environment and constructive-

---

[2]  At the hearing, counsel for the EEOC advised that the EEOC does not know the immigration status of all of the Claimants and has not reviewed copies of any Claimant's T-Visa application.

discharge claims (and related pattern-and-practice claims) against the
Grower Defendants based on the following orchard-related employment
actions on account of the Claimants' race and national origin:

- the Claimants were disciplined and yelled at if their work was not properly done, ECF No. 141 ¶¶ 127 (Green Acre) & 233 (Valley Fruit);
- the Claimants were subject to deplorable working conditions, *id.* ¶¶ 131 (Green Acre) & 189 (Valley Fruit);
- the Claimants had to work four hours without a break, *id.* ¶ 148 (Green Acre);
- the Claimants had to do more difficult work than the workers of Mexican descent, *id.* ¶¶ 150 (Green Acre) & 214-16 (Valley Fruit);
- the working conditions became so intolerable that the Claimants felt compelled to escape, *id.* ¶¶ 162 (Green Acre) & 228 (Valley Fruit);
- the Claimants were harassed and threatened to meet quotas, *id.* ¶¶ 163-67 (Green Acre) & 229-32 (Valley Fruit);
- the Claimants were told that their work was not good enough, *id.* ¶ 185 (Green Acre); and
- the Claimants were required to continue working in 100 degree weather, *id.* ¶ 218 (Valley Fruit).

ECF No. 178 at 11.  The Court also found the First Amended Complaint's
orchard-related factual allegations plausibly state a claim of
retaliation (and related pattern and practice claim) against Green
Acre.  *Id.* at 12.

Last fall, the parties disagreed as to the scope of permissible
discovery, *inter alia*; and the Court was asked to ascertain the scope
of discovery pertaining to immigration matters.  In a November 29,
2012 Order, the Court recognized that a civil litigant is typically
unable to discover another litigant's immigration status simply for
the purpose of challenging the litigant's credibility.  ECF No. 245
(citing *Barrera v. Boughton*, No. 3:07-cv-1436(RNC), 2010 WL 124094 (D.
Conn. Mar. 19, 2010); *David v. Signal Int'l, LLC*, 257 F.R.D. 114 (E.D.
La. 2009); *Sandoval v. Rizzuti Farms, Ltd.*, No. CV-07-3076-EFS, 2009

WL 2058145 (E.D. Wash. July 15, 2009); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746 (D. Md. 2008); *Galviz Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 502 (W.D. Mich. 2005); *Catalan v. Vermillion Ranch Ltd. P'ship*, No. 06-cv-01043 WYD-MJW, 2007 WL 951781 (D. Col. Mar. 28, 2007).  The Court's Order required the Grower Defendants to engage in structured discovery relating to the Claimant's immigration information: the Grower Defendants were ordered to depose the Claimants to discern "the alleged bases for their hostile-work-environment and constructive-discharge claims and related pattern-and-practice claims against the Grower Defendants as to orchard-related matters, as well as the alleged bases for their retaliation claim and related pattern-and-practice claim against Green Acre as to orchard-related matters."  ECF No. 245 at 12-13.  The Court invited Defendants to seek leave of Court to obtain information about the Claimants' immigration information if, after deposing the Claimants, they believed "there is a need to compare or contrast the information received from that Claimant regarding their treatment by the Grower Defendants with that contained in the Claimant's T-Visa application."  *Id.* at 13.

Global did not participate in the briefing or oral argument relating to the prior dismissal or discovery motions as Global had yet to fully appear in this lawsuit.  Global's counsel was granted permission to participate *pro hac vice* in November 2012, ECF No. 237; and the previously-entered default against Global was set aside on January 24, 2013, ECF No. 292.  Global filed its answer on January 31, 2013.  ECF No. 294.

Thus far, five Claimants, including the two named Claimants, have been deposed: three Claimants in December 2012, and two Claimants in spring 2013. See ECF Nos. 346, 352, 356, & 360. Defendants also deposed a representative from the Thai CDC. The deposed Claimants testified that while working at the Grower Defendants' orchards they primarily interacted with the Global representatives. The deposed Claimants complained about the lack of work hours, the delay in initial work payment, the limited ability to travel to get food, the limited food, the living quarters, having to drink tap water, and having to share one refrigerator. These Claimants testified they received $50 a week for food, in addition to the money that was direct deposited to an account in Thailand for the work they performed. Their interaction with Grower Defendants' employees was limited to when a Grower Defendant employee would demonstrate how an orchard task was to be performed. The deposed Claimants testified that a Global employee came to their residence to discuss a report that a Thai worker had called an attorney: during this meeting, the Global employee placed a pistol on the table. The Claimants testified that they left the provided housing in the early morning hours because they knew their H-2A guest-worker status was nearing an end and they were unhappy with their amount of work. The deposed Claimants were afraid to return to Thailand because they had paid approximately $16,000 American dollars to come to the United States to work and had mortgaged their land to pay this amount. These Claimants made contacts with others who picked them up near the provided housing; the Claimants then made it to the Los Angeles area either by car or by

1   bus.  They began working in the restaurant industry, which was illegal

2   as the H-2A guest-worker visas only granted permission to perform work

3   at the identified orchards.  The deposed Claimants also made contact

4   with the Thai CDC to assist them with gaining permission to stay in

5   the United States.

6        Some of the Claimants also made contact with the Department of

7   Homeland Security (DHS) in hopes of receiving a T-Visa.  DHS

8   ascertains whether an individual qualifies for a T-Visa by considering

9   whether the individual:

10      (1)  Is or has been a victim of a severe form of
             trafficking in persons;
11      (2)  Is physically present in the United States, American
             Samoa, or at a port-of-entry thereto, on account of
12           such trafficking in persons;
        (3)  Either:
13           (i)  Has complied with any reasonable request for
             assistance in the investigation or prosecution of
14           acts of such trafficking in persons, or
             (ii) Is less than 15 years of age; and
15      (4)  Would suffer extreme hardship involving unusual and
             severe harm upon removal, as described in paragraph
16           (i) of this section.

17  8 U.S.C. § 214.11(b).  To evaluate whether removal will result in

18  extreme hardship involving unusual and severe harm, the Department of

19  Homeland Security considers:

20      (i)   The age and personal circumstances of the applicant;
        (ii)  Serious physical or mental illness of the applicant
21            that necessitates medical or psychological attention
              not reasonably available in the foreign country;
22      (iii) The nature and extent of the physical and
              psychological consequences of severe forms of
23            trafficking in persons;
        (iv)  The impact of the loss of access to the United States
24            courts and the criminal justice system for purposes
              relating to the incident of severe forms of
25            trafficking in persons or other crimes perpetrated
              against the applicant, including criminal and civil

26

**ORDER** - 7

1          redress for acts of trafficking in persons, criminal
            prosecution, restitution, and protection;
2      (v)  The reasonable expectation that the existence of laws,
            social practices, or customs in the foreign country to
3           which the applicant would be returned would penalize
            the applicant severely for having been the victim of a
4           severe form of trafficking in persons;
       (vi) The likelihood of re-victimization and the need,
5           ability, or willingness of foreign authorities to
            protect the applicant;
6      (vii) The likelihood that the trafficker in persons or
            others acting on behalf of the trafficker in the
7           foreign country would severely harm the applicant; and
       (viii)    The likelihood that the applicant's individual
8           safety would be seriously threatened by the existence
            of civil unrest or armed conflict as demonstrated by
9           the designation of Temporary Protected Status, under
            section 244 of the Act, or the granting of other
10          relevant protections.

11 *Id.* § 214.11(i)(1).  The applicant is:

12          encouraged to describe and document all factors that may be
            relevant to his or her case, since there is no guarantee
13          that a particular reason or reasons will result in a
            finding that removal would cause extreme hardship involving
14          unusual and severe harm to the applicant. Hardship to
            persons other than the alien victim of a severe form of
15          trafficking in persons cannot be considered in determining
            whether an applicant would suffer extreme hardship
16          involving unusual and severe harm.

17 *Id.* § 214.11(i)(2).  An individual seeking a T-Visa completes Form I-

18 914, which at the time of this Order requires the applicant to sign

19 the form under penalty of perjury and contains a preparer and/or

20 interpreter certification.[3]   I-914, Application for T Nonimmigrant

21 Status, http://www.uscis.gov/I-914 (last visited July 30, 2013).

22

23

24      [3] The Court takes judicial notice of this form.  Fed. R. Evid.

25 201.  The Court is aware that this is likely not the form completed by

26 the Claimants given this form became effective on May 4, 2012.  Yet,

**ORDER** – 8

**2.  Analysis**

With this background, the Court analyzes Defendants' motions to lift the discovery prohibition on immigration information.  As the Court discussed in its November 2012 discovery order, the discovery of relevant immigration-related information can be limited under Federal Rule of Civil Procedure 26(c).  Rule 26(c) permits the Court to issue a protective order "for good cause" shown "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  The burden is on the party seeking the protective order to "show good cause" by "demonstrating harm or prejudice that will result from the discovery."  *Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1063-64 (9th Cir. 2004).

The Court is guided by the Ninth Circuit's decision in *Rivera* to assess whether immigration-related information is discoverable.  In *Rivera*, the Ninth Circuit upheld a protective order, which restricted the employer's ability at the early stage of the litigation to obtain its employees' immigration status.  The Ninth Circuit found "the protective order was justified because the substantial and particularized harm of the discovery—the chilling effect that the disclosure of plaintiffs' immigration status could have upon their ability to effectuate their rights—outweighed [the employer's] interests in obtaining the information during the initial discovery stage of the litigation."  *Id.* at 1063-64.  Thus, *Rivera* does not

---

because the form is consistent with the statutory requirements, the Court understands the prior version(s) would be substantially similar.

1   establish a blanket discovery prohibition as to immigration

2   information. Rather, *Rivera* directs the district court to abide by

3   Rule 26: first, assess whether the requested immigration information

4   is relevant, and then, if it is relevant, balance each party's

5   respective interests. Here, as the requesting party, Defendants have

6   the initial burden of establishing relevance; and then the EEOC, as

7   the party seeking the protective order, has the burden of showing good

8   cause for the continued entry of the protective order. The Court

9   engages in its Rule 26 analysis below.

10          a.   <u>Relevance</u>

11          First, the Court finds the T-Visa applications, and evidence

12   submitted in support, are more than likely to contain information

13   relevant to the EEOC's claims filed on behalf of the Claimants and the

14   Defendants' defenses. It is understood that the sole basis for a

15   Claimant's T-Visa application is that the Claimant asserts he was the

16   victim of human trafficking at the hands of Global, the Grower

17   Defendants, or another entity involved in the process of coordinating

18   the Claimant's ability to work in the United States as guest workers.

19   Consistent with the statutory requirements for obtaining a T-Visa

20   under 8 U.S.C. § 214.11, a Claimant applying for a T-Visa would have

21   "describe[d] and document[ed] all factors relevant to his or her

22   case." *Id.* 214.11(i)(2). Because the Claimants' work in the United

23   States was limited to that performed at the Grower Defendants'

24   orchards and other locales coordinated by Global, a Claimant's

25   description of human trafficking would necessarily include discussion

26   of Global's and/or the Grower Defendants' treatment of that particular

Claimant: the treatment of Claimants by Defendants is highly relevant to the EEOC's employment claims. Therefore, the T-Visa applications are a non-privileged matter that is relevant to a party's claims or defenses. Fed. R. Civ. P. 26(b).

The EEOC emphasizes that this lawsuit does not involve causes of action regarding human trafficking. This statement is technically true: the EEOC's claims in this lawsuit allege that Defendants discriminated against the Claimants on the basis of their race and national origin. However, the underlying premise is that the Defendants intentionally hired Thai guest workers believing that they could subject them to undesirable and unfair working practices, as compared to the Mexican workers, and the Thai guest workers would be too fearful to complain about their working and living conditions. Therefore, the Court understands that the EEOC will in fact emphasize the Claimants' Thai race and ethnicity to help prove Defendants' alleged discriminatory animus.

In addition, the Court determines that whether a Claimant successfully obtained a T-Visa, i.e., a Claimant's T-Visa status, is relevant. Not only is this important information to assess the credibility and motivation of a Claimant to file a Charge of Discrimination, it can potentially lead to information regarding what the EEOC knew about Global's and/or the Grower Defendants' conduct when the EEOC engaged in the "conciliation process" and/or when this lawsuit was filed.

The EEOC argues that this information is irrelevant because Defendants failed to show that the deposed Claimants lied about how

they were treated at the Grower Defendants' orchards or as to how they were recruited.  This argument is not persuasive.  Rule 26 permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Rule 26 does not require the Grower Defendants to establish that the Claimants lied in order to establish the relevance of this immigration information.

For the above-given reasons, the Claimants' T-Visa applications, material filed to support such applications, and T-Visa status are relevant to the EEOC's claims and the Defendants' defenses.[4]

            b.    <u>Cause</u>

Having found that a Claimant's T-Visa application and supporting material and T-Visa status are relevant to the claims and defenses, the Court now finds the EEOC fails to show that good cause exists for the continued discovery restriction regarding T-Visa-related information.  It is undisputed that all of the Claimants were in the United States unlawfully after they chose to leave their guest-worker relationship.  Therefore, there is no undue prejudice to be suffered by a Claimant if Defendants discover that the Claimant has a T-Visa.  And there is no evidence before the Court that a Claimant has a justifiable fear of deportation if their T-Visa application, supporting material, or resulting T-Visa status is discovered by Defendants in this lawsuit.  In addition, Defendants agree that any discovered immigration-related information will be subject to the

---

[4]    The question of whether this immigration information is admissible is not before the Court at this time.

**ORDER** – 12

—

1  stipulated protective order, ECF No. 312.  Finally, each of the

2  Claimants have interacted with the Thai CDC and EEOC and thus are

3  familiar with the services that each of these entities can provide if

4  a Claimant is concerned about his T-Visa information being disclosed,

5  subject to a confidentiality order, in this lawsuit.

6      The EEOC suggests that the discovery prohibition as to

7  immigration information be lifted as to each Claimant only *after*

8  Defendants have deposed that particular Claimant.  Based on the

9  testimony of the five Claimants deposed thus far, the Court finds no

10 basis for this unduly restrictive proposal.  Requiring Defendants to

11 first depose each of the Claimants[5] and then seek Court permission to

12 discover the relevant T-Visa-related information as to the deposed

13 Claimants would unfairly burden Defendants with a costly discovery

14 process, especially since the Claimants reside throughout the United

15 States.  Deposition costs are already increased due to the Claimants'

16 monolingual Thai-language abilities, which result in the need for an

17 interpreter.  Because an interpreter is necessary and the Claimants

18 are not sophisticated individuals, the ability to decrease deposition

19 costs through the use of telephonic or videoconference depositions is

20 unavailable.  The Court therefore finds a Claimant-by-Claimant

21 immigration-information review process is both unnecessary and

22

23      [5]  At the hearing, counsel for the EEOC advised that it still

24 does not know the number of Claimants.  The EEOC will identify the

25 Claimants by the Court-ordered August 2, 2013 deadline, ECF No. 348.

26 At this time, Defendants understand the Claimants number 101.

unreasonable.   The EEOC has failed to establish good cause for the continued discovery prohibition as to the Claimants' T-Visa information.

### 3.    Conclusion

For the above-given reasons, the Court grants the Defendants' motions and permits the defense to discover the Claimants' T-Visa applications, supporting material, and resulting T-Visa status. Because the EEOC does not possess any T-Visa information as to the Claimants, Defendants may utilize the appropriate discovery methods to obtain this information.   Any discovered immigration information will be subject to the parties' stipulated confidentiality order, ECF No. 312.

## B.    Grower Defendants' Motion for Fees as Prevailing Party, ECF No. 350

The Grower Defendants ask the Court to find that they are the prevailing party as to their previously granted summary-judgment motion to dismiss untimely claims and, therefore, ask the Court to award them their reasonable attorney's fees under 42 U.S.C. § 2000e5(k).   The EEOC opposes the motion arguing that 1) the Grower Defendants do not qualify as prevailing parties, 2) the Grower Defendants failed to sufficiently meet and confer, and 3) the EEOC's position on the summary-judgment issue was not frivolous, unreasonable, without foundation, or in bad faith.

### 1.    Background

Pretrial, there has been much communication between counsel as to who is a "Claimant."   The First Amended Complaint defines

"Claimants," stating in pertinent part:  "This is an action . . . to provide appropriate relief to Marut Konpia, Laphit Khadthan, and the class of similarly situated Thai and/or Asian individuals (collectively, the "Claimants").  ECF No. 141 ¶ 1.  On February 6, 2013, the EEOC identified 245 Claimants as to Green Acre and 199 Claimants as to Valley Fruit.

After the Grower Defendants examined the work dates for these Claimants, they advised the EEOC that only 58 "Green Acre" Claimants and 97 "Valley Fruit" Claimants worked at the Grower Defendants' orchards during the applicable 300-day period preceding the Charges of Discrimination.  On February 11, 2013, the Grower Defendants' counsel wrote EEOC Regional Director Anna Park:

> We have received the EEOC's answers to Interrogatory 30. In response the EEOC has identified 175 individuals who worked on Green Acre Farms' orchards in 2004 only and 87 individuals who worked on Valley Fruit's Orchards in 2004 only.  Pursuant to Judge Shea's July 27, 2012 Order, the claims of these individuals are time-barred.  We are requesting that the EEOC dismiss its claims on behalf of these individuals within fourteen days of today's date or we will move for summary judgment and seek sanctions pursuant to Rule 11 and the Supreme Court case, *Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), and for the cost of the motion, as well as for a proportionate share of Grower Defendants' attorney's fees in litigating this suit from July 27, 2012 forward.

ECF No. 351, Ex. A (emphasis added).

On March 4, 2013, Sue Noh, Acting Supervisory Trial Attorney for the EEOC, wrote Grower Defendants' counsel.  Id., Ex. B at 7.  Ms. Noh highlighted that because the EEOC is the Plaintiff, not the Claimants, "dismissal" is not the mechanism for limiting the class of Claimants on whose behalf the EEOC seeks relief.  *Id.*  Ms. Noh stated, "[T]he

1   EEOC acknowledges that this Court has ruled on Grower Defendants'

2   motion to dismiss (ECF No. 178) to limit claims for damages to those

3   individuals employed during 300 days prior to the filing of the

4   charge." Id. Ms. Noh continued:

>       Moreover, the claimants are identified by the EEOC not only
>       for the purposes of support [sic] the EEOC's case for
>       monetary damages, but also identified for purposes of
>       injunctive relief, and as third party witnesses. To the
>       extent your question relates to EEOC's position as it
>       relates to damages, without waiving the EEOC's right to
>       appeal the Court's rulings, the EEOC is willing to identify
>       the group within the 300 days period. . . . Assuming
>       arguendo that discovery has been completed and no
>       modifications or corrections are needed to be made to the
>       EEOC's interrogatory responses, the Order (ECF No. 178) did
>       not preclude injunctive relief for those Claimants who
>       worked for Grower Defendants in 2004 only.

*Id.* at 7-8. Ms. Noh finished by stating she was willing to work with

the Grower Defendants to "come to an agreement . . . on the dates of

employment." *Id.* at 8.

On March 5, 2013, Ms. Joffe responded, stating, in pertinent

part:

>       We do not agree that the EEOC may seek injunctive relief on
>       behalf of individuals whose claims are time-barred and the
>       case law, including Morgan, supports this position. Nor do
>       we agree that this is a reasonable or justified
>       interpretation of the Court's ruling. While the EEOC need
>       not submit a formal dismissal for all time-barred
>       claimants, it certainly could provide formal notice to
>       Grower Defendants that it is withdrawing their names as
>       Claimants and is instead offering them up as potential
>       third-party witnesses. . . . Leaving them as Claimants
>       makes clear the EEOC is seeking relief on their behalf.

Id., Ex. C at 11. There is also email correspondence between opposing

counsel during this time frame; the emails reiterate the information

and positions taken in the letters. Id., Ex. E.

The Grower Defendants filed their Motion for Summary Judgment as to Untimely Claims, ECF No. 328, on March 29, 2013.  On June 12, 2013, the Court granted the Grower Defendants' motion, requiring the EEOC to identify the Claimants by August 2, 2013.  ECF No. 348.

**2.    Standard**

Title VII permits an award of a reasonable attorney's fees to the prevailing party.  42 U.S.C. § 2000e-5(k).  The statute in pertinent part states:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

*Id.*  Although the statute refers to a "prevailing party," case law has established that a prevailing defendant under Title VII is entitled to an award of reasonable attorney's fees only for prevailing as to claims that are "frivolous, unreasonable, or groundless."  *Harris v. Maricopa Cnty. Sup'r. Ct.*, 631 F.3d 963 (9th Cir. 2011).  To determine whether this standard is met, the court assesses "the claim at the time the complaint was filed, and must avoid *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."  *Harris*, 631 F.3d at 976 (quoting *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir. 2006)).  "The purpose of awarding attorneys' fees to a defendant in a civil rights case is to deter frivolous or harassing litigation."  *Ellis v. Cassidy*, 625 F.2d 227, 230 (9th Cir. 1980).

A defendant need not prevail on all claims and issues but rather a defendant is considered a prevailing party if the ruling on the frivolous, unreasonable, or groundless claim "materially alters the legal relationship between the parties by modifying the [plaintiff's] behavior in a way that directly benefits the [defendant]." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). "The degree of the [defendant's] success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Tex. State Teachers Ass'n v. Garland Indep.*, 489 U.S. 782, 790 (1989) (emphasis in original). A party can achieve "prevailing party" status as to a claim that is resolved during the pendency of the lawsuit. *Id*. Yet, if a party's "success on a legal claim can be characterized as purely technical or de minimis," a court can determine that the prevailing party threshold is not met. *Id.*

### 3.  Analysis

First, the Court finds the Grower Defendants sufficiently met and conferred in order to provide the EEOC with an opportunity to identify the Claimants before they filed the summary-judgment motion. The correspondence between counsel identifies that the Grower Defendants clearly explained that they believed the Court's July 2012 Order restricted the EEOC's ability to seek either injunctive or monetary relief on behalf of only those Claimants who worked at the Grower Defendants' orchards within the applicable 300-day period, i.e., not on behalf of Claimants who only worked at a Grower Defendant orchard in 2004. The EEOC responded that it could seek injunctive

relief, but not monetary relief, on behalf of all Thai individuals who worked at the Grower Defendants' orchards irrespective of the 300-day limitation.    Based on the EEOC's response, the Grower Defendants replied on March 5, 2013, that they "will proceed accordingly," which, based on counsel's prior February 11, 2013 letter, should have been understood to mean that the Grower Defendants would move for summary judgment on the issue.  ECF No. 351, Exs. A & C.  The EEOC filed its Motion for Summary Judgment as to Untimely Claims, ECF No. 328, on March 29, 2013.  Accordingly, the EEOC had approximately three weeks to clarify its position and to prevent the filing of the summary-judgment motion by the Grower Defendants.  Instead, the EEOC waited until responding to the summary-judgment motion to clearly state that the EEOC is not basing its injunctive-relief claims on behalf of a Thai individual who only worked at a Grower Defendants' orchard prior to the 300-day window.

Although the Grower Defendants sufficiently met and conferred before filing their motion for attorney's fees, the Court denies the Grower Defendants' motion for attorneys' fees.  The Court's summary-judgment Order, ECF No. 348, did not sufficiently alter the legal relationship between the parties as to justify an award of attorney's fees to the Grower Defendants at this time.  In the summary-judgment Order, the Court ruled that the EEOC cannot seek relief, injunctive or otherwise, on behalf of an individual who did not work at a Grower Defendants' orchard during the 300 days preceding the applicable Charges of Discrimination.  *Id*.  This ruling did not dispose of any EEOC claim but rather restricted the individuals on whose behalf the

1  EEOC can seek relief through its claims and narrowed the window of

2  conduct against which Defendants must defend.    Therefore, the relief

3  granted to the Grower Defendants in the summary-judgment Order is not

4  sufficient for them to be considered a prevailing party.    It is

5  premature for the Court to assess whether the EEOC's injunctive relief

6  claims are frivolous or brought in bad faith.

7      **4.    Conclusion**

8      For these reasons, the Court denies the Grower Defendants'

9  Motion for Fees as Prevailing Party, ECF No. 350.

10 **C.    Summary**

11     For the above-given reasons, **IT IS HEREBY ORDERED:**

12     1.    The Grower Defendants' Joint Motion to Modify Protective

13         Order Re: Immigration Status to Allow Discovery of

14         Claimants' T-Visa Status and Application Information, **ECF**

15         **No. 345**, is **GRANTED.**

16     2.    Global's Motion Joining Grower Defendants' Motion to Modify

17         Protective Order Re: Immigration Status, **ECF No. 363**, is

18         **GRANTED.**

19     3.    The Grower Defendants' Motion for Fees as Prevailing Party,

20         **ECF No. 350**, is **DENIED.**

21     **IT IS SO ORDERED.**    The Clerk's Office is directed to enter this

22  Order and provide copies to counsel.

23     **DATED** this 31st day of July 2013.

24

25                    s/ Edward F. Shea
                      ————————————————————————
26                    EDWARD F. SHEA
               Senior United States District Judge