UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                    Plaintiff,

          v.

GLOBAL HORIZONS, INC., d/b/a Global
Horizons Manpower, Inc.; GREEN ACRE
FARMS, INC.; VALLEY FRUIT ORCHARDS,
LLC; and DOES 1-10 inclusive,

                    Defendants.

No.: CV-11-3045-EFS

**ORDER GRANTING IN PART, DENYING IN PART, AND DENYING AS MOOT IN PART THE GROWER DEFENDANTS' SUMMARY-JUDGMENT MOTION; GRANTING IN PART AND DENYING AS MOOT IN PART THE EEOC'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT; AND STRIKING TRIAL AT THIS TIME**

A hearing occurred in the above-captioned matter on May 14, 2014. EEOC was represented by Sue Noh, Derek Li, Damien Lee, and Jamal Whitehead. Green Acre Farms, Inc. and Valley Fruit Orchards, LLC (collectively, the "Grower Defendants") were represented by Beth Joffe, Brendan Monahan, and Olivia Gonzales. Before the Court were two summary judgment motions: 1) Grower Defendants' Motion for Summary Judgment, ECF No. 408, and 2) EEOC's Amended Motion for Partial Summary Judgment on the Grower Defendants' First Affirmative Defense (Conditions Precedent), ECF No. 517. The Grower Defendants' motion is broader, seeking a ruling on three different matters: 1) each individual Grower Defendant is not a joint employer with Global, 2) there is no evidence presented by the EEOC to establish a triable issue of fact to survive summary judgment on its Title VII claims

against the Grower Defendants, and 3) the EEOC failed to satisfy its pre-lawsuit Title VII requirements.  The EEOC's motion is focused on the last issue: seeking summary judgment on the Grower Defendants' first affirmative defense, which submits the EEOC failed to satisfy its statutory pre-lawsuit requirements.  After reviewing the record and relevant authority and listening to counsels' arguments, the Court grants in part, denies in part, and denies as moot in part the Grower Defendants' motion, ECF No. 408, and grants in part and denies as moot in part the EEOC's motion, ECF No. 517.  The Court's reasoning follows.

**A.   Factual Statement[1]**

Green Acre Farms, Inc. ("Green Acre") and Valley Fruit Orchards, LLC ("Valley Fruit") are both located in Eastern Washington and grow a

---

[1] When considering the motions, the Court 1) believed the undisputed facts and the non-moving party's evidence, 2) drew all justifiable inferences therefrom in the non-moving party's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by the non-moving party that were flatly contradicted by the record.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).  In lieu of a detailed factual statement, the Court highlights basic facts in this factual statement, and then adds more facts in conjunction with the analysis of particular issues below.  In addition, more detailed facts can be found in the parties' statements of uncontroverted facts.  ECF Nos. 528 & 539.

variety of crops, including apples, pears, and peaches.  Starting in approximately 2003, Green Acre and Valley Fruit each experienced significant labor shortages.  In late 2003, in response to the labor shortages, Jim Morford, the owner of Green Acre, and John Verbrugge, the owner of Valley Fruit, met with Mordechai Orian, the Chief Executive Officer of Defendant Global Horizons, Inc. ("Global"), to discuss having Global, a labor contractor, supply workers to the Grower Defendants' orchards.  Each of the Grower Defendants independently contracted with Global for Global to provide temporary guest workers for their respective operations in 2004 and 2005.

Through a federal H-2A guest worker program, Global provided the Grower Defendants with workers from Thailand.  Pursuant to the Farm Labor Contractor Agreements entered into with the Grower Defendants, Global was responsible for housing, providing transportation, and paying the Thai guest workers.  Each Grower Defendant provided work for the Thai guest workers as permitted by the crop season and weather.

Global's primary orchard supervisor in Washington in 2004 was Bruce Schwartz, and in 2005, Mr. Schwartz returned to Washington periodically to observe the Thai guest workers.  *Id.*  In 2005, Charlie Blevins was Global's primary orchard supervisor for the Thai guest workers in Washington.  *Id.*  In addition to Mr. Blevins and Mr. Schwartz, Global employed orchard supervisors in Washington named Pranee Tubchumpol, Larry Collins, Sam Wongsesanit, Prinya Sangkarat, Joseph Knoller, and Jose Cuevas.

Global's supervisors met each day with representatives of Green Acre and Valley Fruit to determine the nature of work that needed to be performed at each orchard.  Grower Defendants' owners and/or management would demonstrate for the Thai guest workers as to how a particular orchard task would be accomplished.  Global staff served as interpreters, as the Thai workers did not speak or understand English and the Grower Defendants' owners and managers did not speak or understand Thai.  Task instructions were often different for each orchard as the approaches to pruning, thinning, tying, and even harvest depended on a variety of factors such as the age, size, and health of the trees.  Consistent with industry practices, work crews were instructed to "color pick" at times and to pay attention to fruit size.[2]  Additional factors such as weather, variety, and market conditions also affected the independent approaches taken by the Grower Defendants in their respective orchards.

---

[2] In the apple-growing industry, only apples of a certain size or color grade can be readily sold; this is why workers are told to avoid picking the "culls."  There is no relationship between the size of an apple and the difficulty level or work involved in picking it.  Apples are graded by color at the packing house and those with a better color are graded higher and thus sell for a higher price on the market.  The only instruction given as to size of an apple is that workers should not pick apples that are less than 2.25 inches and/or are green (other than a green variety apple, such as Granny Smith); apples such as these are referred to as culls.

During 2004 and 2005, Global staff and management threatened in Thai to send the Thai workers back to Thailand or transfer them to other farms making less money, if they did not work hard enough, complained, failed to obey, or missed the daily headcount.

The EEOC received hundreds of charges of discrimination filed by Thai guest workers who had worked for Global and farms throughout the continental United States and in Hawaii.  Seventy-two Thai individuals filed Charges of Discrimination against Green Acre; twenty-eight Thai individuals filed Charges of Discrimination against Valley Fruit.

In 2011, the EEOC brought suit on behalf of Thai guest workers who worked at the Grower Defendants' orchards and filed an administrative claim ("Thai Claimants").[3]  The EEOC pursues Title VII claims against Global and the Grower Defendants, as joint employers, including claims of hostile work environment, constructive discharge, and retaliation (only as to Green Acre), on behalf of these Thai Claimants.

**B.   Summary Judgment Standard**

Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party opposing summary judgment must point to specific facts establishing a genuine dispute of material fact for trial.  *Celotex Corp. v. Catrett,*

---

[3]  During 2004 and 2005, the Grower Defendants also used the services of workers who appeared to be of Hispanic descent.  No claims are brought on behalf of the Hispanic-descent workers in this lawsuit.

477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  If the non-moving party fails to make such a showing for any of the elements essential to its claim for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Celotex Corp.*, 477 U.S. at 322.

**C.    Analysis and Authority**

The Grower Defendants seek dismissal of the Title VII claims against them because 1) the EEOC cannot establish a genuine dispute of material fact that the Grower Defendants were the Thai Claimants' employers as required by Title VII, 2) the EEOC cannot establish a genuine dispute of material fact that the Grower Defendants mistreated or discriminated against any Thai Claimant on the basis of race or national origin or retaliated against any Thai Claimant because of the exercise of a right protected under Title VII, and 3) the EEOC failed to satisfy its Title VII investigation and conciliation requirements before filing the lawsuit.  The EEOC opposes the motion in its entirety, and also seeks a ruling in its favor on the last issue through its own summary-judgment motion.

**1.    Title VII Employer Status**

The Grower Defendants argue there is no evidence to support a finding that the Grower Defendants were the Thai Claimants' employers, rather the evidence shows that Global remained the Thai Claimants' sole employer even on the orchards, consistent with the parties' Farm

Labor Contractor Agreements.[4]  The EEOC disagrees, contending the evidence establishes a triable issue of fact as to whether the Grower Defendants employed the Thai Claimants given that the Grower Defendants' owners and/or managers dictated where in the orchards the Claimants would work and what tasks they would complete, and that Mr. Morford, the owner of Green Acre, and Mr. Verbrugge, the owner of Valley Fruit, both recognized that if they were unhappy with a Thai Claimant's work quality that they could tell Global that the Thai Claimant would no longer work at their orchard.

Title VII serves to achieve equality in employment opportunities. *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). Accordingly, a defendant must be deemed to be an employer of the claimed aggrieved employee in order for Title VII to apply. *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980) (recognizing that the "connection with employment need not necessarily be direct").

---

[4] The Court previously ruled that the First Amended Complaint, ECF No. 141, fails to allege sufficient facts to support a finding that the Grower Defendants were "employers" of the Thai Claimants as to non-orchard related matters, such as recruiting, transportation, housing, and wage payment. ECF No. 178 at 7-8. Accordingly, the question before the Court now is whether the EEOC presented sufficient evidence to establish a triable issue of fact has to whether the Grower Defendants were the Thai Claimants' employers for orchard-related matters.

The test applied to determine whether an entity is an employer for Title VII has been adopted from the employee-versus-independent contractor setting.  In that context, the following test is used to determine whether an individual is an employee or an independent contractor for purposes of Title VII: "a court should evaluate 'the hiring party's right to control the manner and means by which the product is accomplished.'" *Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945-46 (9th Cir. 2010) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)).  Although the right to control the means and manner of the worker's performance is the primary factor to determine whether one is the employer of the worker, the following factors are also analyzed: 1) the skill required; 2) the source of the instrumentalities and tools; 3) the location of the work; 4) the duration of the relationship between the parties; 5) whether the hiring party has the right to assign additional projects to the hired party; 6) the extent of the hired party's discretion over when and how long to work; 7) the method of payment; 8) the hired party's role in hiring and paying assistants; 9) whether the work is part of the regular business of the hiring party; 10) whether the hiring party is in business; 11) the provision of employee benefits; and 12) the tax treatment of the hired party. *Id.* at 945-46 (quoting *Darden*, 503 U.S. at 323).  *Cf. Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 2007) (using an economic reality test to determine that a farm was a joint employer for purposes of the Fair Labor Standards Act and Migrant and Seasonal Agricultural Worker Protection Act).

After focusing on these factors and, in particular, the "control" factor, the Court finds a genuine dispute of material fact exists as to whether the Grower Defendants employed the Thai Claimants, in addition to Global, for orchard-related activities. There is sufficient evidence put forward by the EEOC that the Grower Defendants' owners and supervisors controlled the work to be done by the Thai Claimants.   As to control, although Global was primarily responsible for monitoring and tracking the Thai Claimants' work, there is evidence that the Grower Defendants' owners and managers provided instruction and direction, through the use of interpreters, to the Thai Claimants as to what tasks to work on, what areas of the orchard to work, and how to perform a task.   In addition, even though Global supervisors were primarily responsible for overseeing the Thai Claimants while they were at the orchard, the Grower Defendants monitored the Thai Claimants' work product and advised Global supervisors to address deficient work, such as bruising of apples. Therefore, focusing solely on the Grower Defendants' control as to the Claimants' orchard-related activity, the Court finds there is a triable dispute of fact as to whether the Grower Defendants are the Thai Claimants' employer.

Although many of the independent-contractor-versus-employee factors are not directly on point, the Court proceeds to analyze these factors as well.   As to the first factor (skill required), the Grower Defendants did not control which Thai Claimants initially came to the orchards and what skills those particular Thai Claimants possessed. However, once at the orchard, the Grower Defendants' owners and

managers demonstrated how the work should be done, and communicated with the Global supervisors if they were unhappy with the work product achieved by the Thai Claimants.

As to the second factor, the source of the instrumentalities and tools, the Grower Defendants provided the orchard, as well as the tools to be used by the Thai Claimants, including pruning and picking equipment. As to the third factor, the location of work, Global selected which Thai Claimants worked at what orchard; yet the Grower Defendants identified what area of an orchard a Claimant would work on a particular day.

The fourth factor, the duration of the relationship between the parties, weighs both in favor and against a finding that the Grower Defendants were the Thai Claimants' employer. First, Global hired each Claimant and decided which Thai Claimant to assign to a particular orchard or work crew. However, the Thai Claimants did not typically work at the Grower Defendants' orchards for merely days, but rather worked for weeks and/or months for a particular Grower Defendant.

As to the fifth factor, whether the hiring party has the right to assign additional tasks to the hired party, there is no evidence that the Grower Defendants assigned non-orchard work to a Thai Claimant. However, as to orchard-related tasks, the Grower Defendants did assign additional tasks—so long as Global still offered that particular Thai Claimant to work at that orchard.

As to the sixth factor, the extent of the hired party's discretion over when and how long to work. Global was responsible for

determining at which particular orchard or farm the Thai Claimant worked and for what duration. However, if a Grower Defendant owner was unhappy with a Thai Claimant's work performance, it was understood that Global would reassign the Thai Claimant to a different orchard or farm. As to whether orchard work was available on a particular date, that decision was made by the Grower Defendants, and the Grower Defendants advised Global as to how many workers they desired. Global would then determine which Thai Claimants would work at that orchard. The hours worked on a particular day was dependent on a number of factors, including the particular task, the speed of work done by the Thai Claimants, whether chemicals had been applied to the orchard, and the weather. Accordingly, the Grower Defendants did control when and how long the Thai Claimants worked on a particular day, while the Global supervisors determined when the Thai Claimants would take their breaks during a particular work day. Because a Thai Claimant's transportation was dependent on Global, the Thai Claimant had little discretion over when and how long to work. Yet a Thai Claimant could choose to not work when sick.

The seventh factor, the method of payment, weighs against a finding that the Grower Defendants employed the Thai Claimants. Global was solely responsible for paying the Thai Claimants based on the hours they worked. Grower Defendants would pay Global based on the total hours worked by the Thai Claimants.

As to the eighth factor (the hired party's role in hiring and paying assistants), there is no evidence that the Thai Claimants hired or paid assistants. As to the ninth and tenth factors (whether the

1   work is part of the regular business of the hiring party, and whether

2   the hiring party is in business), it is undisputed that the work done

3   by the Thai Claimants was orchard work done in the regular course of

4   the Grower Defendants' business.

5       The eleventh factor, the provision of employee benefits, weighs

6   in favor of finding that the Grower Defendants are not the employers

7   of the Thai Claimants given that the Grower Defendants did not provide

8   any employee benefits, such has health insurance or retirement, to the

9   Thai Claimants.   The final factor, the tax treatment of the hired

10  party, also weighs in favor of finding that the Grower Defendants did

11  not employ the Thai Claimants as, as indicated above, it was Global,

12  not the Grower Defendants, who paid the Thai Claimants.

13      In summary, when viewing the entire record in the light most

14  favorable to the EEOC, including the Thai Claimants' declarations and

15  deposition testimony, the Court finds a genuine issue of material fact

16  as to whether the Grower Defendants were joint employers under Title

17  VII of the Thai Claimants with Global as to orchard-related matters.

18  The evidence presented shows triable disputes of fact as to whether

19  the Grower Defendants controlled the Thai Claimants' work tasks and

20  the manner to accomplish such tasks.   *See, e.g.,* ECF No. 415, Ex. TT;

21  ECF No. 485, Ex. 1 ¶¶ 24 & 25, Ex. 2 ¶¶ 17 & 18, Ex. 3 ¶¶ 15, 16, &

22  22, Ex. 4 ¶ 20, Ex. 5 ¶¶ 18-21, Ex. 6 ¶¶ 13 & 14, Ex. 7 ¶¶ 22-24, Ex.

23  8, ¶ 18, Ex. 10 ¶¶ 23, 25 & 26; ECF No. 486, Ex. 11 ¶¶ 13-1, Ex. 12 ¶¶

24  10, 22, & 24-29, Ex. 13 ¶¶ 28-30, Ex. 14 ¶¶ 11 & 39, Ex. 15 ¶¶ 19 &

25  20, Ex. 16 ¶¶ 24-28 & 42-44, Ex. 17 ¶¶ 24-26, Ex. 18 ¶¶ 26-33; ECF No.

26

490, Ex. 74 at 47:11-23, Ex. 80 at 57:4-25.    Accordingly, the Court denies the Grower Defendants' motion in this regard.

**2.    Merits of Title VII Claims**

The Grower Defendants ask the Court to find the EEOC fails to establish a triable dispute of fact to support its Title VII claims against them.    The EEOC opposes this request, arguing the Grower Defendants intentionally selected Thai workers to work at the orchards because they knew that Thai workers were compliant workers who would not complain about discriminatory practices by them or Global.    As set forth below, the Court finds the evidence fails to establish a genuine dispute of material fact as to any of the asserted Title VII claims against the Grower Defendants.

Title VII provides it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."    42 U.S.C. § 2000e-2(a)(1).    The EEOC pursues hostile work environment (and related pattern-and-practice) claims against both Grower Defendants, constructive discharge (and related pattern-and-practice) claims against both Grower Defendants, and a retaliation claim against Green Acre.

**a.    Hostile-Work-Environment Claim on Behalf of Each Thai Claimant**

The EEOC pursues individualized hostile-work-environment claims under § 706 (42 U.S.C. § 2000e-5(f)) on behalf of each Claimant and a § 707 (42 U.S.C. § 2000e-6) pattern-and-practice claim.    As to its §

706 hostile-work-environment claims, the EEOC contends that an individualized assessment as to each Thai Claimant need not be used by the Court because the EEOC is "not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy," *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 360 (1977). *International Brotherhood of Teamsters*, however, involved a Title VII § 707 pattern-and-practice claim. Therefore, the Supreme Court's statements contained therein regarding not making an individualized assessment until after liability is determined must be analyzed in that context. Based on § 2000e-5(f)'s language and purpose, the Court rules that an individualized assessment must be used for a hostile-work-environment § 2000e-5(f) (§ 706) claim brought by the EEOC on behalf of a Claimant. *See EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1020-21 (D. Ariz. 2013) (analyzing hostile-work-environment claims brought by EEOC on a claimant-by-claimant basis); *EEOC v. Love's Travel Stops & Country Stores, Inc.*, 677 F. Supp. 2d 1176, 1187 (D. Ariz. 2009) (analyzing the employer's actions as to the two female employees on whose behalf the EEOC filed its lawsuit).

Accordingly, to prove its hostile-work-environment claim for each Thai Claimant, the EEOC must prove that the particular Thai Claimant was subjected to verbal or physical conduct by the Grower Defendants based on his race or national origin, and the conduct was unwelcome and sufficiently severe and pervasive to alter the employment conditions and create an abusive working environment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097 (9th Cir. 2008);

*Freitag v. Ayers*, 458 F.3d 528, 549 (9th Cir. 2006).    In addition

because of the joint-employer liability issue, the EEOC may establish

that the Grower Defendants are liable for a hostile work environment

if 1) Global subjected a Thai Claimant to unwelcome verbal or physical

conduct in an orchard-related matter, 2) the Grower Defendants knew or

should have known about this unwelcome conduct, which was based on the

Claimant's race or national origin, 3) the conduct was sufficiently

severe and pervasive to alter the employment conditions and create an

abusive working environment, and 4) the Grower Defendants failed to

take corrective measures that were within its control.    ECF No. 460 at

5.    To satisfy the "abusive work environment" prong, the EEOC must

show that a Thai Claimant's work environment was both subjectively and

objectively hostile.    *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d

634, 642 (9th Cir. 2003).    In analyzing the nature of the work

environment, the Court looks to the totality of the circumstances,

including the frequency, severity, and nature of the conduct.    *Id.*

　　　The EEOC contends that because the Court must look to the

totality of the circumstances, the Court can consider more than

orchard-related activity.    The Court agrees that it may look at the

totality of the circumstances, including in limited respects Global's

non-orchard related conduct, however, the Court's ultimate

determination regarding the hostile work environment claims is focused

on whether a *Grower Defendant* 1) subjected a Thai Claimant to

unwelcome verbal or physical conduct based on the Claimant's race or

national origin that was sufficiently severe and pervasive to alter

the employment conditions and create an abusive working environment,

*or* 2) knew or should have known of unwelcome verbal or physical conduct at the orchards, which was based on the Claimant's race or national origin, by *Global* that was sufficiently severe and pervasive to alter the employment conditions and create an abusive working environment, and which the respective Grower Defendant failed to take corrective measures within its control.

    With this focus, the Court finds the EEOC failed to meet its burden of proof on its § 706 hostile-work-environment claims as to any Thai Claimant.  There simply is no evidence to support a finding that any Grower Defendant owner or manager engaged in physical conduct toward a Thai Claimant, and there is no evidence to support a finding that the Grower Defendants' verbal discussions with a Thai Claimant, which were all done through a Thai interpreter, were either objectively or subjectively hostile and based on the Thai Claimant's race or national origin.  The mass of evidence before the Court shows that the Grower Defendants' owners and managers discussed with the Thai Claimants the need to be careful with how they picked the fruit and/or that the Thai Claimants needed to speed up their work.  *See, e.g.*, ECF No. 485, Ex. 9 ¶ 21; ECF No. 486, Ex. 12 ¶ 31, Ex. 13 ¶ 31; Ex. 15 ¶ 21.  These work quantity and quality discussions and interactions between a Grower Defendant owner or manager and a Thai Claimant, which were interpreted by a Global supervisor, were not unwelcome conduct, and even if the conduct could be construed as unwelcome, it was not sufficiently severe to create an abusive working environment.

1      The most detailed description of a negative interaction between

2  a Thai Claimant and a Grower Defendant personnel is a statement made

3  by Supap Promson:

> At Green Acre, the owner or manager rode a motorcycle
> around the orchards and observe me and the other Thai
> workers. One time, this farm owner or manager told Global's
> supervisor to send me home because he said I was bruising
> the fruit. I was sent back to the bus. We were sent home
> when the Global supervisor told us that the Green Acre
> owner or manager told him that there was no more work or
> that the fields were not available for work. Using a Global
> supervisor who could speak Thai, the Green Acres owner or
> manager also made me re-do work, like going back and
> picking more apples, or picking the right size apples.

10  ECF No. 486-10 (grammar errors in original).  Thai Claimant Jare

11  Chuenjaichon also made a similar statement in his declaration, "In

12  2005, I saw the Green Acre owner Jim Morford inspecting the apples and

13  was not happy that the apples were bruised. Jim Morford fired the

14  group leader and about three other Thai workers by not having them

15  work in Green Acre any more."  ECF No. 485, Ex. 5 ¶ 22; *see also* ECF

16  No. 487, Ex. 28 ¶ 35.  These statements fail to show that the Grower

17  Defendants created a hostile work environment based on the Thai

18  Claimants' race or national origin; rather, Green Acre's interactions

19  with the Thai Claimants sought to achieve a quality work product

20  without regard to the Thai Claimants' race or national origin.

21      Thai Claimant Chit Intip also stated:  "Valley Fruit and Green

22  Acres farm owners/managers were aware that me and my Thai-coworkers

23  were routinely subjected to threats because my Thai coworkers who

24  could speak English spoke to farm employees."  ECF No. 485, Ex. 7 ¶

25  13.  This statement, however, is conclusory and does not contain any

26  specifics as to whom the Grower Defendants' personnel was, does not

indicate that the "threats" were due to the Claimants' race or national origin, and lacks personnel knowledge as to what was actually translated. "Few tepid incidents of aggressive, or even offensive, interactions are insufficient to create a severe or pervasive hostile work environment, which is both subjectively and objectively abusive. *See, e.g., Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990).

In comparison to these tepid statements, other Thai Claimants stated that the Grower Defendants did *not* take any racially or national-origin based unwelcome conduct toward them. For example, Marut Kongpia testified that no one from Valley Fruit threatened or yelled at him and he did not observe such conduct toward other Thai Claimants. ECF No. 411, Ex. P at 43:23-25, 71:20-25, & 72:1-15; *see also* ECF No. 412, Ex. Q at 54:2-5, Ex. S at 64:11-25. This is also true for Laphit Khodthan, who stated that he was not talked unkindly to by anyone from Green Acre and Green Acre's personnel did not discipline him, other than teach him to trim trees a certain way. ECF No. 411, Ex. O at 38:13-23 & 39:1-18. Mr. Khodthan's experience at Valley Fruit was similar. *Id.* at 40:18-22 & 52:14-25.

Some Thai Claimants did state that Global workers used derogatory names, such as "lizard" and "stupid," toward them. ECF No. 487, Ex. 28 ¶ 35, Ex. 34 ¶ 16; ECF No. 491, Ex. 89 at 181:1-25. However, these words were spoken to the Thai Claimants in Thai by Global personnel. There is no evidence that Grower Defendants' personnel were present when these statements were made, or that the Grower Defendants' personnel could even understand what was said in

Thai if they were present.  Instead the evidence clearly shows that the Grower Defendants' personnel did not understand or speak Thai and that all communications with the Thai Claimants and the Grower Defendants' personnel were through Global interpreters.  ECF No. 485, Ex. 3 ¶ 26 ("I also saw Jim [Morford] personally supervise Thai workers through an interpreter, . . . ), Ex. 4 ¶ 20 (Green Acre's supervisors "observed our job performance and through the use of an interpreter, would reprimand us and correct or [sic] work."), Ex. 10 ¶ 26 ("Global group leaders such as Narong and Detnarong would interpret."); ECF No. 486, Ex. 15 ¶ 25, Ex. 17 ¶ 26, Ex. 18 ¶¶ 30 & 33, Ex. 20 ¶ 28; ECF No. 487, Ex. 26 ¶ 23 ("As a group leader, I served as a Thai interpreter between my fellow Thai workers and the Valley Fruit farm office and managers."), Ex. 27 ¶ 21 ("With the assistance of Thai group leaders interpreting, Valley Fruit management and employees trained me and my Thai co-workers . . . ."); ECF No. 490, Ex. 74 at 52:1-25 & 53:1, Ex. 78 at 176:18-25 (The Thai workers "were really nice guys but they didn't comprehend and you couldn't communicate with them except through the [Global] supervisors.").

There is evidence that a Global supervisor used physical force on a Thai Claimant.  Detnarong Nuansri states, "Global supervisor Chaiyot hit my head with a cane when he ordered me to work faster and faster." ECF No. 486, Ex. 17 ¶ 14.  However, there is no evidence that this incident was witnessed by, or reported to, a Grower Defendant.

After viewing the evidence in the light most favorable to the EEOC, the Court grants the Grower Defendants' summary judgment on the EEOC's hostile work environment claim brought on behalf of the Thai

Claimants because the evidence submitted fails to establish a triable issue of fact as to whether the *Grower Defendants* subjected Thai Claimants to unwelcome verbal or physical conduct based on the Claimant's race or national origin that was sufficiently severe or pervasive to alter the employment conditions and create an abusive working environment, *or* knew or should have known of unwelcome verbal or physical orchard-related conduct, which was based on the Claimant's race or national origin, by *Global* that was sufficiently severe or pervasive to alter the employment conditions and create an abusive working environment, and Grower Defendant failed to take corrective measures within its control. For these reasons, the Court grants the Grower Defendants summary judgment on the EEOC's § 706 hostile work environment claims.

> **b.   Pattern and Practice of a Hostile Work Environment**

The Grower Defendants also ask the Court to enter summary judgment in their favor on the EEOC's pattern and practice hostile-work-environment claim because the EEOC fails to establish a triable issue of fact as to this claim. To prove a pattern or practice of discrimination, the EEOC must prove that the discrimination by the Grower Defendants was their "standard operating procedure," rather than isolated incidents. *Int'l Bhd. of Teamsters*, 431 U.S. at 336.

The EEOC contends the Grower Defendants had a pattern and practice of subjecting the Thai Claimants to abusive working conditions by 1) setting production quotas at an unreasonable level and pushing the Thai Claimants to meet them, including by threatening the Claimants that failure to meet production quotas would result in

1   the Claimant being discharged and sent back to Thailand, 2) inspecting

2   their work and reprimanding them for not picking the fruit properly or

3   meeting production quotas, 3) assigning easier jobs or trees to pick

4   to the workers who appeared to be of Hispanic descent ("Hispanic-

5   descent workers"), and 4) ignoring Global's abusive and discriminatory

6   conduct toward the Thai Claimants.

7        As summarized above, the evidence simply fails to show that the

8   Grower Defendants created a hostile work environment for the Thai

9   workers, or that the Grower Defendants knew that Global had created a

10  hostile work environment at the orchards.  As to the production quotas

11  that the Thai Claimants complain were unreasonable, there is no

12  evidence submitted that such quotas were objectively unreasonable, or

13  that the production quotas were based on the Claimants' race or

14  national origin.  Although the evidence shows that a Grower Defendant

15  requested that a few Thai workers cease picking apples because those

16  Thai workers were damaging fruit, there is no evidence to support a

17  finding that any Thai Claimants were asked to cease working because

18  they were working too slowly, i.e., failing to meet a production

19  quota, or because of the Thai Claimants' race or national origin.

20       Most of the unpleasant conditions that the Thai Claimants

21  complain about pertain to housing and transportation matters.  As the

22  Court previously ruled, these are not matters within the Grower

23  Defendants' control, and the evidence produced at summary judgment

24  does not cause the Court to deviate from its prior ruling.  The EEOC

25  does produce evidence that one of the houses was owned by Valley

26  Fruit.  However, there is no evidence submitted that this particular

house was in such a condition that the Thai Claimants who lived there believed that the claimed unwelcome living conditions were provided because of their race or national origin.    Further, there is no evidence that the claimed deplorable condition of this house was Valley Fruit's "standard operating procedure," rather than an isolated incident. *Int'l Bhd. of Teamsters*, 431 U.S. at 336.

Assuming arguendo that the Global supervisors called Thai Claimants derogatory names, there is no evidence that the Grower Defendants were aware of the use of derogatory names or that they should have been aware of such use.

The EEOC also points to general statements made by the Thai Claimants that the Hispanic-descent workers were able to work on better trees and they did not have to move ladders.    However, the Thai Claimants' statements on these points are too generalized to establish a triable dispute of fact as to whether the Grower Defendants' treatment of the Hispanic-descent workers was so different than the Grower Defendants' treatment of the Thai Claimants and whether any purported difference in working conditions was based on race or national origin, rather than legitimate work-related reasons, such as the orchard-related experience of the Hispanic-descent workers or that they used personal vehicles. *See Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) ("[W]hen the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment.").

Finally, although the Grower Defendants knew and should have known that the State of Washington had cited Global for violating

state regulations pertaining to wage laws, safety and health requirements, and farm labor licensing, there is no evidence that the State's citations were based on the Thai Claimants' race or national origin or that the Grower Defendants knew or should have known that Global's citations were based on the Thai Claimants' race or national origin.

In summary, the EEOC fails to put forward sufficient evidence to establish a triable dispute of fact as to whether the Grower Defendants had a standard operating procedure of creating a hostile work environment based on the Thai Claimants' race or national origin, or permitting Global to create a hostile work environment at the orchards for the Thai Claimants based on their race or national origin. Title VII is not aimed at eliminating all unpleasant, rude, and uncomfortable conduct in the workplace, rather its aim is to prevent discrimination in the workplace based on a listed protected status. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1253-54 (11th Cir. 1999). Accordingly, even when viewing the evidence in the light most favorable to the EEOC, the Court grants the Grower Defendants' motion for summary judgment on the pattern-and-practice hostile-work-environment claim.

### c. Constructive Discharge

The Grower Defendants also ask the Court to enter summary judgment in their favor on the EEOC's constructive-discharge claims because the EEOC fails to present evidence to support a genuine

dispute of material fact as to these claims.[5]    To prove its constructive-discharge claims, the EEOC is subject to a "higher standard" than a hostile-work-environment claim; the EEOC must prove that conditions were so intolerable that a reasonable person must leave the job. *See Wallace v. City of San Diego*, 479 F.3d 616, 634 (9th Cir. 2007).    Working conditions are so intolerable when they become "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (citation omitted).    For the reasons set forth above, even when taking the evidence in the light most favorable to the EEOC, the evidence simply fails to establish a triable dispute of fact that the working conditions experienced by the Thai Claimants at the Grower Defendants' orchards were so intolerable that a reasonable person would have felt compelled to leave.    The Grower Defendants are granted summary judgment on the EEOC's individual-based and pattern-and-practice constructive-discharge claims.

> **d.    Retaliation Claim (Green Acre only)**

---

[5] The Thai Claimants on whose behalf the EEOC can pursue timely constructive-discharge claims are: Chao Amattat, Bunchai Chanaphai, Jare Chuenjaichon, Duangkaew Khongchai, and Marut Kongpia as against Valley Fruit; and Chao Amattat, Choetchai Chumphang, and Laphit Kadthan as against Green Acre.    ECF No. 410 Ex. H.

1    To prove its retaliation claim against Green Acre, the EEOC must
2    show that a Thai Claimant engaged in a protected activity, and Green
3    Acre subjected that particular Claimant to an adverse employment
4    action because of the protected activity.  *See Hardage v. CBS Broad.*,
5    427 F.3d 1177 (9th Cir. 2005).  If the EEOC establishes a prima facie
6    case then the burden of production shifts to Green Acre to present
7    legitimate reasons for the adverse employment action.  *See Brooks*, 229
8    F.3d at 928.  If Green Acre meets this burden, then the EEOC must
9    demonstrate a genuine issue of material fact as to whether the reason
10   advanced by the employer was a pretext.  *See id.*

11   The EEOC contends Green Acre engaged in a pattern or practice of
12   retaliation because Green Acre failed to routinely take action on the
13   Thai Claimants' complaints of bad working and living conditions,
14   including unpaid wages and poor living conditions.  However, the EEOC
15   fails to show that there is a Thai Claimant on whose behalf the EEOC
16   can timely bring this claim, let alone that Green Acre had a pattern
17   and practice of retaliating against Thai Claimants who engaged in a
18   protected activity.

19   The Court earlier ruled that the First Amended Complaint only
20   alleges a retaliation claim against Green Acre.  ECF No. 178 at 12.
21   Discovery responses evince that a retaliation claim is only brought on
22   behalf of Supap Promson.  Monahan Decl., ECF No. 409 ¶ 35, n.1.
23   However, Mr. Promson is not a timely Claimant given that the EEOC
24
25
26

**ORDER** – 25

provided only 2004 dates for Mr. Promson's work at Green Acre.[6] Accordingly, the EEOC failed to show that it has a Claimant on whose behalf it can assert either an individual claim of retaliation or a claim of a pattern-and-practice of retaliation against the Thai Claimants by Green Acre. Therefore, the Grower Defendants are granted summary judgment as to the EEOC's Title VII retaliation claim.

Assuming arguendo the retaliation claim pursued by the EEOC on Mr. Promson's behalf was timely, the Court finds that any retaliation claim by the EEOC on Mr. Promson's behalf fails to be supported by a triable issue of fact. The information provided by the EEOC as to Mr. Promson regarding engaging in a protected activity is that Mr. Promson complained about living conditions and debt incurred in coming to the United States to work to "Vichai," who was a Global supervisor. Mr. Promson expected Mr. Vichai to report his complaints to Mr. Morford, Green Acre's owner. The Thai Claimants' living conditions and incurred debt are not matters over which Mr. Morford had control.[7]

---

[6] Mr. Promson worked at a Valley Fruit orchard in 2005, not Green Acre.

[7] The Court rules, consistent with joint-employer liability, that an employer business ("business") can be liable for a joint employer's retaliatory conduct if the business fails to take steps to prevent or mitigate the joint employer's retaliatory conduct that was reasonably foreseeable by the business and in an area in which the business had control and the ability to take corrective steps. *See Wigfall v. Sodexo, Inc.*, 539 Fed. Appx. 942, 945 (11th Cir. 2013) (involving a

And there is no evidence that Vichai relayed Mr. Promson's complaints to Mr. Morford, or, assuming arguendo, that Vichai did relay Mr. Promson's complaints to Mr. Morford, that Mr. Morford retaliated against Mr. Promson after receiving this information.  Accordingly, the Court grants Green Acre summary judgment on the retaliation claim. *See Marinello v. Cal. Dep't of Corr. & Rehab*, 430 Fed. Appx. 583 (9th Cir. 2011) ("The district court properly granted summary judgment because Marinello failed to raise a genuine issue of material fact as to whether he engaged in protected activity.").

**3.    Investigation and Conciliation Pre-Lawsuit Requirements**

The Grower Defendants argue that the EEOC cannot prove that it satisfied its Title VII pre-lawsuit requirements, specifically arguing that the EEOC 1) did not investigate the specific allegations of most of the Thai Claimants before identifying them in this lawsuit, 2) did not make a reasonable-cause determination as to any of the Thai Claimants' claims or attempt to conciliate their claims before filing suit, and 3) failed to conciliate in good faith.  The EEOC opposes the Grower Defendants' summary-judgment arguments, and also filed its own summary-judgment motion asking the Court to dismiss the Grower Defendants' First Affirmative Defense: "Plaintiff's claims are barred by its failure to . . . conduct a[n] . . . investigation . . . , and by its failure to conciliate in good faith."

---

joint-employer based Title VII retaliation claim); *Alford v. Martin & Gass, Inc.*, 391 Fed. Appx. 296, 304-05 (4th Cir. 2010).

The first question the Court must resolve is whether the Court may review the EEOC's compliance with its Title VII pre-lawsuit requirements. The Court previously ruled in an April 12, 2013 Order Denying the Grower Defendants' Motion to Dismiss:

> [T]he Court determines the Supreme Court has overturned the Ninth Circuit's holding in *Pierce Packing* that § 2000e-5's pre-lawsuit requirements are jurisdictional requirements, and other Ninth Circuit cases so holding. Section 2000e-5(f)(3), the subsection granting subject-matter jurisdiction, does not limit a federal court's jurisdiction to only those claims for which all pre-lawsuit requirements are met. Rather, § 2000e-5(f)(3) broadly grants a federal court jurisdiction to hear "actions brought under this subchapter." That the subchapter requires the EEOC to notify the respondent, investigate the alleged unlawful employment practice, make a reasonable-cause determination, and meaningfully conciliate the matter prior to bringing a lawsuit does not vitiate a federal court's subject-matter jurisdiction to hear lawsuits brought by the EEOC under § 2000e-5. Rather, these pre-lawsuit requirements are elements that must be proven by the EEOC in order to show that it and the individuals on whose behalf it seeks relief are entitled to relief.
>
> Although these statutory pre-lawsuit requirements are not subject-matter-jurisdiction requirements, it is clear that Congress intended the EEOC to satisfy these requirements before filing suit, and therefore a failure to satisfy these requirements will result in the EEOC's lawsuit being dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) or entry of summary judgment against the EEOC under Rule 56. Additionally, a failure by the EEOC to satisfy its statutory notice, investigation, reasonable-cause determination, and conciliation requirements exposes the EEOC to an award of reasonable attorney's fees and costs against it. Under § 2000e-5(k), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs, and the [EEOC] and the United States shall be liable for costs the same as a private person." Given the potential risk of paying a defendant's attorney's fees and costs, the EEOC must carefully ensure that it has satisfied its statutory pre-lawsuit requirements before filing a lawsuit in federal court. However, the EEOC's failure to satisfy its pre-lawsuit requirements does not restrict the

1    federal court's subject-matter jurisdiction over the filed
     Title VII lawsuit.

2          Accordingly, it is immaterial for purposes of the
     Grower Defendants' motion to dismiss under Rule 12(h)(3)

3    whether the EEOC satisfied its investigation and
     conciliation requirements as to either the pre-October

4    2012-disclosed Claimants or post-October 2012-disclosed
     Claimants.  Therefore, it is not appropriate at this time

5    for the Court to assess the EEOC's pre-lawsuit conduct.
     However, the Court briefly addresses the EEOC's argument

6    that a court may not inquire into the sufficiency of the
     EEOC's pre-lawsuit activities.  Relying on *EEOC v. KECO*

7    *Industries, Inc.*, 748 F.2d 1097 (6th Cir. 1984), the EEOC
     argues that its pre-lawsuit activities are administrative

8    matters for which the Court must grant the EEOC deference
     and therefore may not scrutinize.  In *KECO Industries*, the

9    Sixth Circuit held that it "was error for the district
     court to inquire into the sufficiency of the Commission's

10   investigation."  *Id.* at 1100.  However, this holding must
     be read in the context of the issues before the Sixth

11   Circuit.  The Sixth Circuit was addressing whether the
     district court appropriately examined the sufficiency of

12   the evidence underlying the EEOC's finding of
     discrimination.  This is a different question than would be

13   before the Court in either a motion to dismiss for failure
     to satisfy the pre-lawsuit requirements or a summary-

14   judgment motion contending that the EEOC cannot establish a
     triable issue of fact as to the satisfaction of the pre-

15   lawsuit requirements.  Such motions would not require the
     Court to second-guess the EEOC's determination that

16   discrimination took place.

17   ECF No. 333 (internal citations omitted).  Following entry of this

18   Order, the Seventh Circuit analyzed whether the EEOC's pre-lawsuit

19   conciliation efforts are judicially reviewable prior to a Title VII

20   liability determination.  *EEOC v. Mach Mining, LLC*, 738 F.3d 171 (7th

21   Cir. 2013).  In *Mach Mining*, the Seventh Circuit ruled that the EEOC's

22   conciliation efforts are not substantively judicially reviewable

23   because allowing such review would defeat the purpose of Title VII

24   which is to help ensure that an employer's discriminatory conduct is

25   eliminated quickly and without permitting the employer to "win" the

26   lawsuit based simply on the EEOC's own procedural failures, and would

be inconsistent with Title VII's confidentiality provisions. *Id.* at 179.

The pertinent Title VII statutory language provides that when a charge is filed by or on behalf of a person claiming to be aggrieved by an "unlawful employment practice":

> the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . . (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. . . . If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. . . . The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

42 U.S.C. § 2000e-5(b). Accordingly, pursuant to § 2000e-5(b), the EEOC must 1) serve the employer with a notice of the charge, including the date, place, and circumstances of the alleged unlawful employment practice; 2) investigate the alleged unlawful employment practice; 3) determine that there is reasonable cause to believe the charged unlawful employment practice occurred; and 4) eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Id.* § 2000e-5(b). If

within the specified time period, the EEOC "has been unable to secure from the respondent a conciliation agreement acceptable to the [EEOC], the [EEOC] may bring a civil action against any respondent . . . named in the charge." *Id.* § 2000e-5(f)(1).

The Ninth Circuit has not analyzed whether Title VII's pre-lawsuit requirements are judicially reviewable; however, when reviewing an award of attorney's fees and costs to a prevailing defendant in a Title VII lawsuit, the Ninth Circuit has assessed the EEOC's pre-lawsuit efforts. *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 609 (9th Cir. 1982). Most Circuits have reviewed to some extent the EEOC's pre-lawsuit conciliation efforts. *See EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 832-33 (7th Cir. 2005) (permitting judicial review for a minimal level of good faith by EEOC); *EEOC v. KECO Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984) (permitting judicial review for a minimal level of good faith by EEOC); *EEOC v. E.I. DuPont de Nemours & Co.*, 373 F. Supp. 1321, 1338 (D. Del. 1974) (permitting judicial review for a minimal level of good faith by EEOC); *see also EEOC v. Asplundh Tree*, 340 F.3d 1256, 1259 (11th Cir. 2003) (applying searching three-part test); *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1534 (2d Cir. 1996) (applying searching three-part test); *Marshall v. Sun Oil*, 605 F.2d 1331, 1335 (5th Cir. 1979) (applying searching three-part test). However, as the Seventh Circuit recognized in *Mach Mining*, these courts have assumed judicial review of the EEOC's conciliation efforts without specifically analyzing whether such judicial review is statutorily appropriate.

The Court is persuaded in large measure by the Seventh Circuit's rationale and ruling that a court may not review the substance of the EEOC's pre-lawsuit conciliation efforts but rather is limited to ensuring that the EEOC alleges in the complaint compliance with its conciliation requirement. However, the Court notes that the Seventh Circuit did not comment on whether a court may review the EEOC's pre-lawsuit conciliation efforts after the employer defendant has successfully defended the Title VII claims. *See* 42 U.S.C. § 2000e-5(k) (attorney's fee provision); *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (ruling that one of the bases for an award of attorney's fees and costs to a prevailing employer under § 2000e-5(k) is that the EEOC's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."). The Court need not yet answer the question of whether a court may review the EEOC's pre-lawsuit conciliation efforts when ascertaining whether attorney's fees should be awarded to the prevailing employer defendant. Instead the Court limits its ruling to the matters now before it: 1) whether the Grower Defendants are entitled to summary judgment because the EEOC failed to satisfy its pre-lawsuit investigation, reasonable cause, and conciliation responsibilities, and 2) whether the Court should dismiss the Grower Defendants' first affirmative defense (failure to satisfy pre-lawsuit responsibilities).

Pursuant to the language and purpose of Title VII, as discussed by the Seventh Circuit in *Mach Mining*, the Court modifies its April 2013 ruling, ECF No. 303, and rules that prior to a liability determination in a Title VII lawsuit, a court's review of the EEOC's

1   pre-lawsuit conciliation efforts are limited to reviewing the EEOC's

2   complaint to ensure that it plead that it satisfied this pre-lawsuit

3   statutory requirement.  If the EEOC's complaint alleges compliance

4   with the Title VII conciliation requirement, the Court must accept

5   this alleged fact as true.  Title VII's framework does not establish a

6   defense for an employer to substantively challenge the EEOC's

7   satisfaction of its claimed pre-lawsuit conciliation requirement.  *See*

8   *Mach Mining, LLC*, 738 F.3d at 179 ("Congress's purpose is not served

9   well by litigating the parties' informal endeavors at 'conference,

10  conciliation, and persuasion.' Simply put, the conciliation defense

11  tempts employers to turn what was meant to be an informal negotiation

12  into the subject of endless disputes over whether the EEOC did enough

13  before going to court. Such disputes impose significant costs on both

14  sides, as well as on the court, and to what end?").  Turning to the

15  First Amended Complaint, ECF No. 141 ¶¶ 26-28, the Court finds it

16  adequately alleges compliance with Title VII's pre-lawsuit

17  conciliation requirement.

18      *Mach Mining* does not address the issue of whether a court may

19  judicially review the EEOC's pre-lawsuit investigation and reasonable-

20  cause determinations.  And given that the Court has ruled that the

21  Grower Defendants are entitled to summary judgment on the merits of

22  the Title VII claim, the Court need not reach this issue at this time.

23      In summary, the Court 1) grants the EEOC's motion as it relates

24  to the Grower Defendants' affirmative defense that the EEOC failed to

25  comply with its pre-lawsuit conciliation requirement, and denies as

26  moot the remainder of the motion regarding the EEOC's pre-lawsuit

investigation and reasonable-cause determinations, and 2) denies in part (conciliation) and denies as moot in part (investigation and reasonable-cause determinations) the Grower Defendants' summary-judgment motion as it pertains to the EEOC's Title VII pre-lawsuit responsibilities.

**D.    Conclusion**

Although the Court grants in part the EEOC's summary-judgment motion on the Grower Defendants' first affirmative defense (conciliation) and finds a genuine dispute of material fact as to whether the Grower Defendants jointly employed the Thai Claimants as to orchard-related matters with Global, the Court grants the Grower Defendants summary judgment on all of the EEOC's Title VII claims against them.    For this reason, the trial will now proceed only against Global.    Because the EEOC and Global have pending summary-judgment motions,[8] ECF Nos. 541 & 569, against each other which are set to be heard this summer, and in light of the pending Ninth Circuit appeal regarding a discovery matter, the Court finds it necessary to strike the September 15, 2014 trial date, and associated dates and deadlines, at this time.    Trial, and any remaining dates and deadlines, will be reset following the Court's ruling on the EEOC's and Global's summary-judgment motions.

Accordingly, **IT IS HEREBY ORDERED**:

_____

[8]    Global's motion is currently subject to a motion to strike by the EEOC for being untimely filed.    ECF No. 572.

**ORDER** – 34

1. Grower Defendants' Motion for Summary Judgment, **ECF No. 408**, is **GRANTED IN PART** (no Title VII liability), **DENIED IN PART** (genuine disputes of material fact as to joint employer, and Title VII pre-lawsuit conciliation requirement is not substantively judicially reviewable), **and DENIED AS MOOT IN PART** (Title VII pre-lawsuit investigation and reasonable-cause determination requirements)**.**

2. The EEOC's Amended Motion for Partial Summary Judgment on the Grower Defendants' First Affirmative Defense (Conditions Precedent), **ECF No. 517**, is **GRANTED IN PART** (conciliation) **and DENIED AS MOOT IN PART** (investigation).

3. The EEOC's Motion for Summary Judgment on Grower Defendants' Laches Affirmative Defense, **ECF No. 559**, the Grower Defendants' Motion to Exclude the Report and Testimony of the EEOC's "Expert" Florence Burke, **ECF No. 562**, and the EEOC's Motion for Reconsideration of this Court's Order Granting in Part the Grower Defendants' Joint Motion to Exclude EEOC's Expert Report and Opinions from Michael A. Robbins Based on Relevance, **ECF No. 568**, are **DENIED AS MOOT.**

4. The remaining dates and deadlines in the Second Amended Scheduling Order, **ECF No. 320**, are **STRICKEN**: to be reset following the Court's ruling on the pending summary-judgment motions and/or the Ninth Circuit's ruling on the appealed

1   ///

2   ///

3   ///

4   //

5   /

6   discovery issue.  The summary-judgment hearings shall remain as set at

7   this time.

8        **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this

9   Order and provide copies to counsel.

10       **DATED** this 28th day of May 2014.

11

12                          s/Edward F. Shea
                         _____
13                          EDWARD F. SHEA
                    Senior United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

Q:\EFS\Civil\2011\3045.may.2014.msjs.lc1.docx

**ORDER** - 36