1  ANNA Y. PARK, SBN 164242
   SUE J. NOH, CA SBN 192134
2  DEREK W. LI, CA SBN 150122
   LORENA GARCIA-BAUTISTA, CA SBN 234091
3  NAKKISA AKHAVAN, CA SBN 286260
   U.S. EQUAL EMPLOYMENT
4  OPPORTUNITY COMMISSION
   255 E. Temple Street, 4th Floor
5  Los Angeles, California 90012
   Telephone: (213) 894-1082
6  Facsimile: (213) 894-1301
   E-mail: lado.legal@eeoc.gov
7  Attorneys for Plaintiff EEOC
   (Additional Attorneys on Next Page)

8

                   UNITED STATES DISTRICT COURT
9                  EASTERN DISTRICT OF WASHINGTON

10 EQUAL EMPLOYMENT                ) CIVIL ACTION NO. CV-11-3045-
   OPPORTUNITY COMMISSION,         ) RMP
                                   )
11              Plaintiff,         ) **EEOC'S MEM. OF POINTS &**
                                   ) **AUTH. IN SUPPORT OF ITS**
12        v.                       ) **MOT. FOR SUMM. J. THAT**
                                   ) **GREEN ACRE FARMS, INC.**
13 GLOBAL HORIZONS, INC. D/B/A     ) **IS LIABLE AS A JOINT**
   GLOBAL HORIZONS MANPOWER,       ) **EMPLOYER WHO KNEW OR**
14 INC.; GREEN ACRE FARMS, INC.;   ) **SHOULD HAVE KNOWN BUT**
   VALLEY FRUIT ORCHARDS, LLC;     ) **FAILED TO CORRECT: (1)**
15 AND DOES 1-10, INCLUSIVE;       ) **DISCRIMINATORY**
                                   ) **TREATMENT BASED ON**
16              Defendants.        ) **NATIONAL ORIGIN AND**
                                   ) **RACE AND RELATED**
17                                 ) **PATTERN OR PRACTICE**
                                   ) **CLAIM; AND (2) HOSTILE**
18                                 ) **WORK ENVIRONMENT AND**
                                   ) **RELATED PATTERN OR**
19                                 ) **PRACTICE CLAIM**
                                   )
20                                 ) Hearing: September 20, 2019 at
                                   ) 6:30 p.m. without oral argument
21                                 )

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.

1   Lauren N. Crosby, CA SBN 313649
    U.S. EQUAL EMPLOYMENT
2   OPPORTUNITY COMMISSION
    555 W. Beech Street, Suite 504
3   San Diego, CA 92101
    Telephone: (619) 230-8103
4   Facsimile: (619) 557-7274
    E-Mail: lauren.crosby@eeoc.gov
5
    ALESSANDRA ROSA, IN SBN 35133-29
6   U.S. EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
7   101 W. Ohio Street, 19th Floor
    Indianapolis, IN 46204
8   Telephone: (463) 999-1181
    Facsimile: (317) 317-226-7953
9   E-Mail: alessandra.rosa@eeoc.gov

10

11

12

13

14

15

16

17

18

19

20

21

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

I. INTRODUCTION ..................................................................... 1

II. STATEMENT OF FACTS ......................................................... 2

   A. Green Acre Did Not Investigate Whether Claimants Received
      Adequate Housing, Meals, Transportation, and Wages ................. 2

      1. Green Acre Knew or Should Have Known Global
      Recruited Thai Workers based on Discriminatory
      Stereotypes. ...................................................................... 2

      2. Green Acre Knew Global Was An Unlicensed Farm
      Labor Contractor Investigated For Numerous Violations In
      2004 and 2005. ................................................................. 4

      3. Green Acre Knew or Should Have Known about the
      Substandard Housing, Transportation, and Shorted Wages. ........ 10

      4. Green Acre Knew or Should Have Known the Thai
      Workers Were Being Treated Less Favorably than the
      Hispanic Workers ............................................................. 12

      5. The Thai Workers were Routinely Threatened. ................. 12

III. SUMMARY JUDGMENT STANDARD ............................... 13

IV. LEGAL ARGUMENT ......................................................... 13

V. CONCLUSION ................................................................... 19

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Table of Contents

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>CASES</u>

3

*Addisu v. Fred Meyer, Inc.*
    198 F.3d 1130 (2000). ...............................................................13

4

*EEOC v. Global Horizons, Inc. et al.*
    915 F.3d 631 (9th Cir. 2019)...........................................1,13,14

5

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574 (1986) ..................................................................13

7

*Perez-Farias v. Global Horizons, Inc., et al.*
    2008 WL 833055 (E.D. Washington 2008) .........................................6,7

8

9

*Porter v. Cal. Dep't of Corr.*
    419 F.3d 885 (9th Cir.2005)......................................................13

10

<u>STATUTES</u>

11

Fed.R.Civ.P. 56(c) ........................................................................13

12

13

14

15

16

17

18

19

20

21

ii

## I.   INTRODUCTION

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") moves for summary judgment against Green Acre Farms, Inc. ("Green Acre"). Pursuant to Fed. R. Civ. P. 56(c) and Local Rule 56.1, summary judgment is warranted since there is no dispute as to any material fact that Green Acre is liable as a joint employer of Global Horizons, Inc. ("Global") because it (1) knew or should have known that Global subjected the Claimants to a pattern or practice of disparate treatment and a hostile work environment based on their national origin and race (Thai) in violation of Title VII of the Civil Rights Act, *as amended*. 42 U.S.C. §2000e-5, *et seq*. and (2) failed to take corrective measures within its control.  *EEOC v. Global Horizons, Inc. et al.*, 915 F.3d 631, 641 (9th Cir. 2019).

"All parties agree that the Growers [i.e., Green Acre and Defendant Valley Fruit Orchards] and Global were joint employers of the Thai workers with respect to orchard-related matters." *Id.* at 634.  As the Ninth Circuit held, Growers were responsible for inadequacies in non-orchard related matters (housing, meals, transportation and wages) which affected the Claimants. *Id.* at 640-41.  Because they could not delegate this obligation, Growers had a duty to investigate whether Global provided proper housing, food, transportation, and pay.  Yet, Green Acre did not investigate and ignored various warning signs including ongoing state investigations, Green Acre personnel visiting the housing, and Thai worker complaints.  Thus, Green Acre knew or should have known of the disparate

1

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1    treatment and hostile work environment because the Claimants complained directly

2    to Green Acre, including its owner, about the abysmal living conditions, unsafe

3    transportation, and missing or late wages.  Instead, Green Acre admits it chose to

4    do nothing, even when it learned of the state and federal investigations related to

5    these complaints in 2004 and 2005. Thus, warranting summary judgment.

## II.    STATEMENT OF FACTS

### A.    Green Acre Did Not Investigate Whether Claimants Received Adequate Housing, Meals, Transportation, and Wages.

8    Green Acre admitted that during the time Global's employees were assigned

9    to Green Acre's orchards in 2004 and 2005, Green Acre did not conduct audits or

10   otherwise have a policy, practice or procedure for the purpose of overseeing or

11   reviewing Global's "H-2A visa compliance."   (PSMF #1).[1]  Green Acre also

12   admitted it did not conduct an independent investigation after knowing about the

13   investigations by L&I and the U.S. Department of Labor.  (PSMF #2).

### 1.    Green Acre Knew or Should Have Known Global Recruited Thai Workers based on Discriminatory Stereotypes.

15   Global's Chief Executive Officer ("CEO") Mordechai Orian ("Orian")

---

[1]    "PSMF" refers to the facts and citations to the records stated in Plaintiff EEOC's Statement of Material Facts Supporting its Motion for Summary Judgment Against Green Acre Farms, Inc., which references the exhibits attached to the Declaration of EEOC Trial Attorney Lorena Garcia-Bautista, both filed concurrently with this motion.

2

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1   informed the Growers in 2004 and 2005 that he would be bringing foreign H-2A

2   workers from Thailand. (PSMF #3).  Green Acre's owner Jim Morford, along with

3   Jose Cuevas, a Global supervisor, and Global's manager Bruce Schwartz

4   ("Schwartz"), were present when Orian said the Thai workers, "worked with hoes

5   between rocks and were not afraid of the heat and that the Thai workers are needed

6   in Washington because the [Hispanic] workers don't work like that." (PSMF #4).

7   Morford also clearly stated a preference for Thai workers by stating that Hispanic

8   workers came up with excuses and questioned things too much, and that they did

9   not want to follow the rules and they just wanted to sue for no reason.  (PSMF #5).

10  Orian also told Morford and Cuevas that he planned to buy land far away from the

11  city so that the Thai workers would be isolated and would not be able to speak to

12  anyone. (PSMF #6).  Morford and Orian nodded their heads in agreement when

13  Schwartz said several times that Thai workers were less likely to be informed

14  about their legal rights and they would just want to work. (PSMF #7).  Green

15  Acre's Controller Kevin Boyle stated in an email dated March 24, 2004, to Global:

16  "I understand that the gentlemen from Thailand will be showing up today. Jim

17  [Morford]'s plan is to work them 7 days a week for a while in the near future.

18  Since this is an agricultural business in Washington, we do not pay overtime….

19  Are we paying any overtime rates to you for ANY amount of hours?" (PSMF #8).

20  Further, Green Acre deliberately discouraged local workers from working at Green

21  Acre since Morford banned certain local workers from Green Acre. (PSMF #9).

3

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1   Morford and Orian often discussed removing and replacing Hispanic workers with

2   Thai workers. (PSMF #10).

3          **2.    Green Acre Knew Global Was An Unlicensed Farm Labor
                    Contractor Investigated For Numerous Violations in 2004
4                   and 2005.**

5          From January 2004 to October 7, 2004, Global operated as an unlicensed

6   Washington Farm Labor Contractor at Green Acre.  (PSMF #11). Green Acre

7   knew in the Summer of 2004 that Global did not have a Washington farm labor

8   contractor license.  (PSMF #12). In fact, Global did not obtain a Washington farm

9   labor contractor license until on or about October 2004.  (PSMF #13). Green

10  Acre's owner Morford admitted Nemencio "Nick" Hernandez ("Hernandez") and

11  Claudia Sealock from the Wage and Hour Division of the Washington Department

12  of Labor and Industries ("L&I") came to Green Acre's orchard around July 2004

13  asking about Global's payroll records and asked to see Global's license. (PSMF

14  #14).  Morford provided a license, but it was not the required Washington State

15  license.  Hernandez also confirmed that he told Morford between June and October

16  2004, that Global was not registered as a farm labor contractor in Washington.

17  (PSMF #15).  Such knowledge should have prompted Green Acre to investigate

18  Global.  But, Green Acre continued to use Global's services until the first contract

19  expired in November 2004 and rushed to enter into a second contract in January

20  2005. (PSMF #16).

21         Moreover, despite Global having the provisional Washington Farm Labor

4

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

Contractor license in 2005, the U.S. Department of Labor revoked its federal farm labor contractor certificate in October 2005. (PSMF #17).

In or about December 2004, Global was assessed penalties and citations by L&I for its inadequate, overcrowded, unsanitary housing, lack of first-aid training and certification, lack of hand washing facilities, inadequate septic system, lack of electrical faceplates and other electrical hazards, lack of hot and cold running water, lack of safe food storage space, and lack of proper beds for the Thai workers. Growers had the opportunity to see these violations posted because they had to be posted at the following eight (8) worksites and/or housing locations:

(1) 20 Bailey Rd., Block 2, Zillah, WA 98953 (Inspection No. 308074277);

(2) 381 Buena Loop, Zillah, WA 98953 (Inspection No. 308079557);

(3) 1671 Houghton Zillah, WA 98953 (Inspection No. 308079664);

(4) 1700 N. 1st St., Yakima, WA 98901 (Inspection No. 308130541);

(5) 1490 Pumphouse Road, Block 32, White Swan, WA 98954 (Inspection No. 308070804);

(6) 14390 Pumphouse Rd., Block 2, White Swan, WA 98954 (Inspection No. 308186600);

(7) 1705 Gordon Rd., Yakima, WA 98901 (Inspection No. 308080290); and

(8) 451 Island Road, White Swan, WA 98954 (Inspection No. 308186626).

(PSMF #18).

The State of Washington also issued notices to Global detailing the violation and assessing penalties in or about May and June 2005. Green Acre admitted that

5

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1   it learned through an investigation by L&I that Global deducted state income tax

2   from the Thai workers' pay, despite Washington not having a state income tax

3   (PSMF #19).  Moreover, Orian testified that upon receiving a notice of

4   discontinuation of employment services from the State Employment Security

5   Department in May 2005, he shared that information with Growers. (PSMF #20).

6   On or about June 3, 2005, Green Acre also learned that Global had been alleged by

7   the State of Washington to have violated numerous substantive provisions of the

8   Farm Labor Contractor Act ("FLCA"), RCW 19.30 *et seq*.  (PSMF #21).

9   According to its Answer, at some point in 2005, Green Acre became aware of

10  public allegations that Global violated the FLCA.  (PSMF #22).

11          No later than July 13, 2005, Green Acre, along with Global and Valley Fruit,

12  were sued by Hispanic farm workers in *Perez-Farias v. Global Horizons, Inc., et*

13  *al.*, Case No. 2:05-cv-03061-RHW, in the Eastern District of Washington. The

14  Perez-Farias plaintiffs alleged that Global, Green Acre, and Valley Fruit violated

15  state and federal laws by illegally and intentionally displacing them in 2004 with

16  workers from Thailand. (PSMF #23).  At this time, attorney Ryan Edgley

17  represented all three defendants.  (*Perez-Farias et. al. v. Global Horizons, Inc*., et.

18  al. ECF Docket #s 2 and 65).  Although Green Acre's owner Morford

19  acknowledged that the lawsuit "would have threw (sic) up a red flag to me;" he

20  continued to do business with Global in 2005. (PSMF #24). In fact, in an e-mail

21  dated September 22, 2005, Green Acre's Controller Kevin Boyle wrote, "[e]ven

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1   with the law suit pending, we have confidence in a long term relationship that will

2   benefit us all." (PSMF #25).  In *Perez-Farias*, the jury and the Court found that

3   Global deliberately took steps to discourage local workers from obtaining work

4   with Growers and in doing so, it violated various provisions of the FLCA and that

5   Growers were jointly and severally liable for damages for Global's misconduct.

6   (PSMF #26).  Eliminating the Hispanic workers enabled Growers to take

7   advantage of the Thai workers kept captive in the custody of Global.  *Perez-*

8   *Farias*, 2008 WL 833055 at *6 (E.D. Washington 2008).

9        Green Acre admitted that it knew that about the settlement between Global

10  and the Washington Department of Labor which included admissions of various

11  improper withholdings of taxes (i.e. Global withheld federal and state income taxes

12  from the Claimants), violations of other terms and conditions of employment, and

13  misrepresentations of to DOL in Global's applications for labor certifications in

14  2005. (PSMF #27).  Attorney Ryan Edgley signed the settlement as counsel for

15  Global and had represented Green Acre when the *Perez-Farias* plaintiffs filed suit

16  in July 2005.  (PSMF#49).  Global stipulated to the following facts as part of the

17  Settlement Agreement:

18        (1) Global operated as an unlicensed Washington State
          farm labor contractor (FLC) while providing agricultural
19        labor services to Green Acre Farms from January 28, 2004
          until October 7, 2004, and to Valley Fruit Orchards from
20        January 27, 2004 until October 7, 2004…
          (2) Global did not provide a worker agreement in Thai to
21        its Thai workers at Green Acre Farms at 1490 Pump House

7

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

Rd., White Swan WA 98952.

(3) [Although Global provided the ETA 790 Clearance Orders to its Thai workers], the Clearance Orders lack information required by RCW 19.30.110(7) for worker agreements.

(4) Global violated WAC296-131-015 by failing to include its telephone number, address, and beginning date of the pay period on its employee pay statements during 2004-2005…

….

(6) In 2004, Global withheld $3,166.02 in wages from its H-2A foreign employees … [although] Washington State does not have a state income tax…

(7) In 2004, Global withheld $93,864.32 in wages from its H-2A employees for federal taxes… [although] Global was exempt from all federal tax withholding requirements for its H-2A workers…

(8) Global paid the withheld federal income taxes to the IRS. However, Global has not yet reimbursed any of its H-2A employees for the $93,864.32 in wages withheld for federal income taxes.

(9) Global housed its employees at three locations not listed in its H-2A applications without prior approval of the United State Department of Labor and did not submit the required Washington State license application and fee to operate temporary worker housing at …[the following locations:] (a) Docket No. 05-03-C-2002TH: Mabton Apartments, Mabton, WA; (b) Docket No. 05-03-C-2003TH: Buena Mobile Home, Buena, WA; (c) Docket No. 05-03-C-2004TH: El Corral Motel, Toppenish, WA. The Washington Department of Health notified Global of these violations and assessed civil fines for each location in three separate letters all dated March 3, 2005…;

….

(12) Global reported a total of 82,897 hours for the first, second, and third quarters in 2004…[, and] reported all of the reported employee work hours for this time period in the wrong risk class…

(13) On December 30, 2004, Global was issued four separate "serious" WISHA safety citations for violations at unlicensed farm worker housing sites where Global

8

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

housed workers in 2004. Two $400 assessments were issued for the inspection site located at 1700 North 1st Street, Yakima, WA 98901, for (1) insufficient cooking facilities (WAC 296-307-16165) resulting in workers cooking on carpeted and bathroom floors, and for (2) an overloaded wall electrical receptacle (WAC 296-307-16140(2)) where three appliances were plugged into an outlet designed for two appliances. A $400 assessment was issued for the inspection site located at 1705 Gordon Rd., Yakima, WA 89801 for insufficient cooking facilities (WAC 296-307-16165) resulting in an employee cooking on a carpeted floor. All three of these assessments were affirmed by Chuck Durham, Hearing Officer for the WISHA Services Division in Corrective Notices of Redetermination dated March 29, 2005…

(14) Global misrepresented to the Department the number of workers its was employing in Washington State during 2004. Global's original July 30, 2004 FLC new license application stated that it intended to employ 30 workers during 2004. Global's October 5, 2004 response to the Department's September 29, 2004 request for a new FLC license application increased its intended employment number to 180.

(15) …. Global misrepresented and underreported to the Washington State Department of Labor and Industries the number of H-2A worker to work in Washington in 2005 by 250 workers in its FLC renewal application for the year 2005.

(16) Global intended to bring at least 500 H-2A workers in to work in Washington State during 2005, if authorized by DOL. In its December 13, 2004 letter to DOL, Global requested certification to bring in 250 H-2A workers for its Zirkle Fruit contract. In its letter and Clearance Order regarding Zirkle Fruit request, Global stated that all 300 H-2A workers brought in to work at Zirkle Fruit would be housed at the Tourist Motel Inn, located at 1223 North 1st Street, Yakima, WA (Occupancy: 300). In its letter regarding the Green Acre request, Global stated that the 250 workers requested for the Green Acre contract would be at 3 employer-provided housing sites: 1671 Houghton Road, Zillah, WA (Occupancy: 23), 1881 Houghton Road,

9

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

Zillah, WA (Occupancy: 23), 381 Buena Loop Road, Yakima, WA (Occupancy: 17), and one public accommodation site, the Red Carpet Motor Inn located at 1608 Fruitvale Blvd., Yakima, WA (Occupancy: 200)….

….

(19) In its April 12, 2005 application to [DOL] requesting H-2A certification for 250 workers, Global listed job duties (i.e. frost set up and pruning) that are not consistent with activities that occur in May and June.

(PSMF #28).  Items 2-13 reflect Global's failure to provide promised terms and conditions of employment that Green Acres had a non-delegable duty to provide and items 1, 14-19 confirm that Global's ongoing misrepresentations to DOL in applications for labor certification filed to supply workers to Growers in 2005.

### 3.    Green Acre Knew or Should Have Known about the Substandard Housing, Transportation, and Shorted Wages.

Global informed Green Acre where it housed the Thai workers and Green Acre's personnel visited their housing. (PSMF #29).  Green Acre's Owner Morford and Managers Arnold Anaya, admitted that they saw the Thai workers arrive to the ranch in the overcrowded, unsafe vehicles. (PSMF #30).

Green Acre directly interfered with the Thai workers' pay since e-mails between Green Acre and Global confirmed that Green Acre was not paying Global's invoices on time for work performed by the Thai workers in 2005. (PSMF #31).  Moreover, Green Acre's Controller Kevin Boyle confirmed in March 2004 that Morford's plan was to work the Thai workers seven days per week and not pay them overtime. (PSMF #32).  In addition, Morford fired a group of Thai workers and/or Green Acre suspended a group of Thai workers for a week

10

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1    without pay for not meeting arbitrary quotas not included in the Clearance Orders

2    that defined the terms of their work and/or for not picking apples properly. (PSMF

3    #33).  Further, as early as September or October 2004, the Thai workers

4    complained about their wages, but Green Acre did not follow up to make sure they

5    were getting paid in 2005. (PSMF #34).

6          L&I investigator Hernandez told Morford that L&I was investigating

7    complaints from the Thai workers about wages and breaks. *Id*.  Green Acre

8    admitted it was generally aware L&I's investigation. (PSMF #35).  In 2004, when

9    Hernandez received Global's invoices from Green Acre for February to August

10   2004, he warned Morford that Green Acre could be liable if Global did not abide

11   by the state employment standards. (PSMF #36).  Schwartz also explained the

12   wage and hour guidelines to a Green Acre foreman and that Global was

13   undergoing a state inspection. (PSMF #37).

14         Green Acre admits it later became generally aware about issue with workers'

15   wages, which were resolved in the September 2005 settlement between Global and

16   the State of Washington.  (PSMF #38).  Green Acre ignored the chance to take

17   corrective action in or about October 2005 when L&I's Hernandez conducted a

18   follow-up investigation to interview the Thai workers to see if they had gotten

19   paid.  In 2005, Global supervisor Pranee Tubchumpol ("Tubchumpol") told

20   Hernandez that there was no money in the bank because the money was with her in

21   a bag.  (PSMF #39).  Tubchumpol then opened a bag for Hernandez to see what

11

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1    she described as $40,000 in the bag. *Id*. When Hernandez followed up the next

2    day to see if the Thai workers got paid, Tubchumpol and the Thai workers were

3    gone. *Id*. Morford never contacted Hernandez to inquire about the results of

4    L&I's investigations of Global. (PSMF #40).

5              **4.    Green Acre Knew or Should Have Known the Thai**
                        **Workers Were Being Treated Less Favorably than the**
6                       **Hispanic Workers.**

7              The Thai workers were being treated less favorably than the Hispanic

     workers since the Hispanic workers were paid more money for less work because
8
     they were paid based on the amount of fruit they picked, while Thai workers were
9
     paid by the hour and forced to work faster to meet quotas set by Green Acre.
10
     (PSMF #41). Global's supervisors confirmed that they received instructions from
11
     Green Acre regarding the quotas imposed on the Thai workers. (PSMF #42).
12
              **5.    The Thai Workers were Routinely Threatened.**
13
              Green Acre routinely subjected the Thai workers to threats and Morford
14
     personally reprimanded the Thai workers. (PSMF #43). In fact, during the
15
     multiple meetings with Morford in 2005, the Thai workers were told they had to
16
     meet production quotas and if they failed, they would be deported back to
17
     Thailand. (PSMF #44). Morford gave Global a form illustrating his detailed
18
     expectation for the Thai workers. (PSMF #45). Only the Claimants were subjected
19
     to the yelling and threats of deportation. (PSMF #46). Morford was also present at
20

21
                                            12

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1    the orchard to witness a group of Thai workers get in a school bus driving through

2    the orchards at Green Acre at 30 mile per hour trying to run away.  (PSMF #47).

### III.    SUMMARY JUDGMENT STANDARD

4        Summary judgment should be granted if there is no genuine issue of material

5    fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

6    56(c) "When the moving party has carried its burden under Rule 56(c), its

7    opponent must do more than simply show that there is some metaphysical doubt as

8    to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

9    574, 586 (1986). The non-moving party must "set forth specific facts showing that

10    there is a genuine issue for trial." *Porter v. Cal. Dep't of Corr.,* 419 F.3d 885, 891

11    (9th Cir.2005). "A scintilla of evidence or evidence that is merely colorable or not

12    significantly probative [does not] present a genuine issue of material fact." *Addisu*

13    *v. Fred Meyer, Inc*, 198 F.3d 1130, 1134 (2000).

### IV.    LEGAL ARGUMENT

15       "Liability may be imposed for co-employer's discriminatory conduct only if

16    defendant employer knew or should have known about other employer's conduct

17    and failed to undertake prompt corrective measures within its control." *EEOC v.*

18    *Global Horizons, Inc. et al.*, 915 F.3d at 641.  Here, there are no genuine disputes

19    of material fact that Green Acre knew or should have known of Global's

20    discriminatory treatment of the Thai workers but chose to do nothing.

21

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

Judge Shea has held that Global subjected the Claimants to a hostile work environment based on inadequate housing, food, wages, and transportation.[2]  (ECF No. 679 at *7.)  Green Acre retained a non-delegable duty to provide wages, housing, transportation, and access to low-priced meals or access to cooking facilities to the Claimants. *EEOC v. Global Horizons, Inc.*, 915 F.3d at 639-41.

Despite their non-delegable duty, Green Acre ignored all warning signs of Global's discriminatory conduct and chose to take no corrective actions.  In fact,

---

[2]     The Growers responded to the EEOC's motion for default against Global by stating that they "do not take a position regarding" "the substantive issues" or the "EEOC's request for $19,500,000 in damages against Global."  (ECF No. 651 at 3:11-12 and 4:21-22.)  Growers further stated they were not liable for any portion of any judgment against Global because, they were "absolved" of liability on "*all* of the EEOC's Title VII claims."  ECF No. 651 at 4:13-17 citing ECF No. 582 and 614.)  But, the orders granting Growers' motion for summary judgment (ECF No. 582) and for fees (ECF No. 614) was reversed.  *EEOC v. Global*, 915 F.3d at 642-643.  Growers have no grounds to challenge Judge Shea's default judgment against Global on other grounds since they took the opportunity to oppose the EEOC's default motion prior to the appeal.

14

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1    Green Acre did not conduct audits, investigate or otherwise implement a policy,

2    practice or procedure to ensure Global's H2-A compliance. (PSMF #s 1-2).

3         There is no genuine issue of material fact that Global and Green Acre

4    recruited Thai workers based on discriminatory stereotypes they sought to

5    manipulate because Orian and Morford discussed their stereotypes about the Thai

6    workers with other supervisors from both companies. Morford stated that Hispanic

7    workers came up with excuses, questioned things too much, did not want to follow

8    the rules, and they just wanted to sue for no reason. (PSMF #5). Orian also told

9    Morford he planned to buy land far away from the city so the Thai workers would

10   be isolated from anyone who could inform them of their legal rights. (PSMF #6).

11        With regard to wages, there is no genuine issue of material fact that Green

12   Acre directly interfered with the Thai workers' pay. Controller Boyle's email

13   dated March 24, 2004 to Global, confirmed Green Acre's effort to short the Thai

14   workers' pay: "I understand that the gentlemen from Thailand will be showing up

15   today. Jim [Morford]'s plan is to work them 7 days a week for a while in the near

16   future. Since this is an agricultural business in Washington, we do not pay

17   overtime…. Are we paying any overtime rates to you for ANY amount of hours?"

18   (PSMF #8). This establishes that Green Acre intended to violate the H2-A

19   regulations that established the Claimants' terms and conditions of employment,

20   keeping them isolated and unaware of their rights, so that they could take

21   advantage of them with a discriminatory purpose. Judge Shea has held:

15

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1  "Frequently Global delayed payment of earned wages to the claimants causing

2  financial hardship to them and their families"  (ECF No. 679 at *7).  E-mails

3  between Green Acre and Global confirmed that Green Acre was not paying Global

4  on time for work performed by the Thai workers in 2005.  (PSMF #31).  Despite

5  knowing in September or October 2004, that the Thai workers were complaining

6  about their wages, Green Acre did not follow up to make sure they were getting

7  paid in 2005.  Hernandez of L&I told Morford that the department had received

8  complaints from the Thai workers about wages and that Green Acre could be

9  liable. (PSMF #36). Green Acre specifically admitted that it learned through L&I's

10  investigation that Global improperly deducted state income tax from the Thai

11  workers' pay. (PSMF #19).  But, Morford never contacted Hernandez about L&I's

12  investigations of Global. (PSMF #40). Instead, Green Acre finished out the first

13  contract with Global in November 2004, then without hesitation signed a second

14  contract in January.  (PSMF #16).  Orian testified that he told Growers upon

15  receiving a notice of discontinuation of employment services from ESD in May

16  2005.  (PSMF #20).  Morford himself ignored warning signs he saw:  he and

17  Schwartz were present at the orchard when a group of Thai workers started driving

18  through the orchards at Green Acre at 30 mile per hour trying to run away.  (PSMF

19  #47).

20       With regard to housing, Judge Shea already found that "Global rented living

21  facilities away from the orchards. These facilities were substandard because they

16

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1    were too small for the number of claimants assigned to them resulting in

2    overcrowding; these living quarters lacked adequate bathrooms and cooking

3    appliances, were unsanitary, and were bug infested, making them virtually

4    uninhabitable." (ECF No. 679 at *7). Green Acre knew or should have known

5    Global subjected Claimants to uninhabitable housing in violation of various laws

6    because Green Acre's personnel visited their housing and both Orian and Schwartz

7    testified Green Acre was told where the Thai workers were housed. (PSMF #29).

8    Given their ultimate responsibility for housing, this required Green Acre to

9    investigate the housing, but Green Acre chose to investigate nothing.

10    Green Acre also knew or should have known Global was under state and

11    federal investigations and was assessed penalties for violating state and federal

12    laws with respect to the Claimants' housing in 2004 because these violations had to

13    be posted at the site of each violation. (PSMF #18). The postings at their worksites

14    should have prompted Green Acre to investigate Global but Green Acre did not

15    investigate.

16    With regard to transportation, Judge Shea previously held that, "The

17    claimants were subjected to unsafe and overcrowded transportation when it was

18    made available. Frequently, they were denied transportation to stores to buy food

19    and to health care facilities for medical attention to injuries and illnesses." (ECF

20    No. 679 at *7). Green Acre knew or should have known the Thai workers were

21    transported unsafely because Morford and Anaya testified that they saw the Thai

17

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1    workers arrive to the ranch in a dangerously overcrowded bus. (PSMF #30).

2    With regard to working conditions, Judge Shea ruled that, "The Thai

3    workers were given more difficult work and paid less than [Hispanic] workers at

4    the same work locations." (ECF No. 679 at *7). Green Acre knew Thai workers

5    were being treated less favorably than the Hispanic workers since the Hispanic

6    workers were paid a piece rate, while Thai workers were paid by the hour and

7    forced to work faster to meet quotas set by Green Acre. (PSMF #41).

8    Green Acre knew or should have known that the Thai workers were subject

9    to harassing threats at the orchards since Morford personally reprimanded the Thai

10   workers including threats of deportation. (PSMF #43).

11   While Morford acknowledged that the 2005 *Perez-Farias* lawsuit "would

12   have threw (sic) up a red flag to me;" he continued to do business with Global in

13   2005. (PSMF #24). Green Acre admits that it became aware that Global had

14   entered a settlement with the State of Washington in September 2005 containing

15   various admissions on violating the law. (PSMF #27). But Controller Boyle's

16   reaction on September 22, 2005, was, "[e]ven with the law suit pending, we have

17   confidence in a long term relationship that will benefit us all." (PSMF #25).

18   The Settlement Agreement was signed on Global's behalf by attorney Ryan

19   Edgley who also represented Growers in July 2005 when the *Perez-Farias* suit was

20   filed. (PSMF# 49). The Settlement Agreement shows Global admitting to

21   misrepresentations about the number of Thai workers needed Washington because

18

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1  Global's purpose was to help Green Acre replace the Hispanic workers with Thai

2  workers held captive in unauthorized, isolated locations who could not readily

3  complain about the denial of adequate pay, transportation, and housing.

4  **V.    CONCLUSION**

5      For the foregoing reasons, Green Acre is liable as a joint employer because

6  it knew or should have known that Global subjected the Claimants to a pattern or

7  practice of disparate treatment and a hostile work environment based on their

8  national origin and race and Green Acre failed to take prompt corrective measures

9  within its control.

10  Dated: July 31, 2019                    Respectfully Submitted,

11                                          U.S. EQUAL EMPLOYMENT
                                            OPPORTUNITY COMMISSION
12
                                            */s/ Lorena Garcia-Bautista*
13                                          **LORENA GARCIA-BAUTISTA**
                                            Attorney for Plaintiff EEOC

14

15

16

17

18

19

20

21

19

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Memorandum of Points and Authorities

1

**Certificate of Service via Electronic Filing System**

2          I am, and was at the time the herein mentioned mailing took place, a citizen

3   of the United States, over the age of eighteen (18) years and not a party to the

4   above-entitled cause.

5          I am employed in the Legal Unit of the Los Angeles District Office of the

6   United States Equal Employment Opportunity Commission.  My business address

7   is Equal Employment Opportunity Commission, Los Angeles District Office, 255

8   East Temple Street, Fourth Floor, Los Angeles, CA 900l2.

9          On the date that this declaration was executed, as shown below, I served the

10  foregoing document **EEOC'S MEM. OF POINTS & AUTH. IN SUPPORT OF**

11  **ITS MOT. FOR SUMM. J. THAT GREEN ACRE FARMS, INC. IS LIABLE**

12  **AS A JOINT EMPLOYER WHO KNEW OR SHOULD HAVE KNOWN**

13  **BUT FAILED TO CORRECT: (1) DISCRIMINATORY TREATMENT**

14  **BASED ON NATIONAL ORIGIN AND RACE AND RELATED PATTERN**

15  **OR PRACTICE CLAIM; AND (2) HOSTILE WORK ENVIRONMENT**

16  **AND RELATED PATTERN OR PRACTICE CLAIM** with the Clerk of the

17  Court using the CM/ECF System which will send notification of such filing to the

18  following:

19                   Brendan Victor Monahan, bvm@stokeslaw.com
                       Justo G. Gonzalez, jgg@stokeslaw.com
20                   Lance A. Pelletier, lance.pellier@stokeslaw.com
                       Jaime Cuevas Jr., jcj@stokeslaw.com

21

EEOC's P&A in Support of MSJ Against
Green Acre Farms, Inc.
Certificate of Service

1      Beth G. Joffe, Joffeb@lanepowell.com

2          I declare under penalty of perjury that the foregoing is true and correct.

3  Executed on July 31, 2019, at Los Angeles, California.

4                          */s/ Lorena Garcia-Bautista*
                           Lorena Garcia-Bautista, CA SBN 234091
5                          Attorney for Plaintiff
                           U.S. Equal Employment Opportunity Commission
6                          255 E. Temple St., 4th Floor, Los Angeles, CA
                           Telephone: (213) 894-1108
7                          Fax: (213) 894-1301
                           Lorena.garcia@eeoc.gov

8

9

10

11

12

13

14

15

16

17

18

19

20

21